NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11990


COMMONWEALTH  vs.  DONALD GIBSON.



Hampden.     March 8, 2016. - July 13, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



Practice, Criminal, Probation, Revocation of probation,
    Assistance of counsel.  Due Process of Law, Probation
    revocation, Assistance of counsel.  Constitutional Law,
    Assistance of counsel.




Indictments found and returned in the Superior Court
Department on February 22, 2006.

A hearing on an order to show cause why the defendant
should not be deemed to have forfeited his right to counsel at a
probation revocation proceeding was had before C. Jeffrey
Kinder, J., and a proceeding for revocation of probation was
heard by Richard J. Carey, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Glynis Mac Veety for the defendant.
Bethany C. Lynch, Assistant District Attorney, for the
Commonwealth.

HINES, J.  The principal issue in this appeal is whether a Superior Court judge properly ordered the forfeiture of the defendant's right to counsel in a probation revocation hearing. The judge, faced with a defendant who admittedly engaged in a pattern of quarrelsome, confrontational, hostile, and threatening conduct toward a succession of nine different court-appointed attorneys over the course of the trial and posttrial proceedings, ordered forfeiture on those grounds.  Subsequent to the forfeiture order, the defendant appeared pro se at the probation revocation hearing.  A different judge found the defendant in violation of probation and sentenced him to State prison for a term of not less than seven years and not more than eight years, from and after the sentence he was then serving. The defendant appealed, claiming error in the forfeiture order and the probation revocation hearing.  The Appeals Court affirmed, Commonwealth v. Gibson, 87 Mass. App. Ct. 829, 835 (2015), ruling that the judge had provided the defendant a full and fair opportunity to be heard on forfeiture and that the forfeiture order had been warranted based on the defendant's pattern of threats to counsel.  The Appeals Court also rejected the defendant's claims related to the probation revocation hearing.

We granted the defendant's application for further appellate review to consider whether the forfeiture order, based

on the defendant's pattern of hostile and threatening conduct toward counsel, warrants forfeiture under the guidelines we articulated in Commonwealth v. Means, 454 Mass. 81 (2009). Although we appreciate the imperative to force an end to the defendant's interference with the timely and fair disposition of the probation revocation matter, we are constrained to conclude that the forfeiture order must be reversed, as it does not comply with the strict guidelines we adopted in Means, supra. Therefore, we vacate the forfeiture order based on our conclusion that (1) the forfeiture hearing did not meet the procedural due process requirements of Means; and (2) the defendant's conduct, although egregious in many respects, did not warrant forfeiture under the guidelines established in Means.

Background. We describe the details of the proceedings leading to the judge's forfeiture order and the subsequent probation violation hearing. In 2006, the defendant was indicted on three charges of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B. Six attorneys were appointed to represent the defendant during the trial proceedings. The third of these trial attorneys withdrew for a number of reasons, including the defendant's written threat to counsel that "street justice" would prevail if he were convicted. The sixth attorney represented him during trial. He

was convicted on two of the three indictments in 2008.[1]  The victim was his daughter.  The trial judge sentenced the defendant to a term of not less than eight years and not more than ten years in State prison on the first indictment, and to probation for fifteen years on the second indictment, to run concurrently with the sentence on the first indictment.  As a condition of probation, the judge ordered the defendant to have no contact, direct or indirect, with the victim or the victim's mother (his ex-wife).

On September 14, 2011, the probation department issued a probation violation notice alleging that the defendant had violated the no-contact condition by sending sexually explicit letters to the victim from prison.[2]  Prior to the probation revocation hearing and after the appointment of three different attorneys to represent the defendant in that matter, a judge issued an order to the defendant to show cause why his right to counsel should not be deemed forfeited.  On February 27, 2013, the day after the issuance of the show cause order, the judge

---

[1] The defendant's convictions were affirmed by the Appeals Court in a memorandum and order issued pursuant to its rule 1:28.  Commonwealth v. Gibson, 78 Mass. App. Ct. 1119 (2011).

[2] The probation department issued additional surrender notices alleging that the defendant had written letters to the victim on the following dates:  November 27, 2010; June 10, 2011; March 15, 2012; December 22, 2012; and January 9, 2013.

conducted the hearing and made findings and rulings summarized below.

1.  The succession of posttrial appointed counsel.  On September 29, 2011, the court appointed an attorney from the Committee for Public Counsel Services to represent the defendant at the probation revocation hearing.  On March 19, 2012, this attorney filed a motion to withdraw with an affidavit detailing the defendant's threats to file a complaint against the attorney with the Board of Bar Overseers (board) unless counsel adopted the defense strategies proposed by the defendant.  A judge allowed the motion to withdraw and, on March 30, 2012, appointed a second attorney to represent the defendant.  On June 21, 2012, this attorney filed a motion to withdraw, citing a breakdown in the attorney-client relationship, and further specifying the defendant's conduct in an impounded affidavit.[3]  A second judge allowed the motion to withdraw.  On June 28, 2012, that judge considered the defendant's motion for appointment of a third postconviction attorney and allowed the motion.  During the course of the hearing, however, the probation officer reminded the judge that the matter had been pending since 2011 and opined that the delay was caused by the withdrawal of the defendant's

---

[3] Although this affidavit is not included in the record, we assume that the judge reviewed it, as he referenced the defendant's misconduct toward each of the attorneys who moved to withdraw from representation of the defendant.

two prior attorneys.  The defendant's newly appointed counsel
then assured the judge that despite this history, he would be
able to "take care of" the defendant.  The following exchange
took place between the judge and the defendant:

    Judge:  "You know what, [counsel]?  I know you'll be able
to take care of him, because if you can't take care of him, he's
going to have to take care of himself.

    "Mr., Mr. . . . I'm talking to you, Sir.  So look at me and
listen.

    "I, I read prior counsel's affidavit and I was troubled by
the contents of her affidavit.  You will not get another
attorney appointed to represent you, do you understand me, Sir?"

    Defendant:  "If they don't do me justice, I can't keep them
on.  So, that's why I had to . . ."

    Judge:  "Do you understand?  It's a yes or no.  Do you
understand?"

    Defendant:  "Yes."

Several months later, on September 4, 2012, the defendant
filed a motion for the appointment of a fourth attorney.  The
third attorney, who earlier had expressed optimism about his
ability to represent the defendant, filed a motion to withdraw
on September 10.  On September 13, 2012, a third judge held a
hearing during which he allowed the motion to withdraw but
ordered that the attorney serve as standby counsel for the
probation revocation hearing.[4]  The relationship between counsel
and the defendant apparently deteriorated even further, as

_____

    [4] The record does not contain a transcript of this hearing.
We rely on the docket for the outcome of the hearing.

counsel filed a second motion to withdraw on February 26, 2013. In response to this second motion to withdraw, that judge issued an order to show cause why the defendant should not be deemed to have forfeited his right to counsel. The judge then appointed a different attorney to represent the defendant at the show cause hearing scheduled for the following day.[5]

On February 27, 2013, the day after the issuance of the show cause order, the judge held the hearing, at which he considered two issues: whether to allow counsel's motion to withdraw; and if so, whether the defendant's conduct warranted a forfeiture of the right to counsel. As to the first issue, the judge inquired of the defendant whether he wished to be heard on counsel's motion to withdraw. The defendant replied that he had no desire to have counsel withdraw, but he admitted that he had threatened to report counsel to the board. According to the defendant, he believed the threat to report counsel to the board and to the office of the Attorney General was appropriate because counsel's legal advice to cease writing letters to the victim in violation of his probation was causing him "undue stress." In particular, the defendant complained that counsel had lied in advising that the defendant could be subject to "life in prison" as a consequence of the charge of which he was

---

[5] The record is not clear as to whether this attorney was appointed on the issuance of the show cause order or whether counsel was appointed on the day of the hearing.

convicted.[6]  He also disagreed with counsel's advice that the

victim did not wish to have contact with him and that his

letter-writing to her was a violation of probation.  Last, the

defendant expressed frustration that although he had other

reasons to be dissatisfied with counsel, he was unable to

articulate those reasons at that time because he had been

"diagnosed with a brain tumor deep in [his] brain that's . . .

inoperable [causing him to have] a little trouble . . . putting

things into words."  After noting that much of the defendant's

recitation was consistent with counsel's affidavit in support of

the motion to withdraw, the judge allowed the motion and

proceeded to the forfeiture issue.

In commencing this stage of the hearing, the judge signaled

his awareness of the obligation to grant an evidentiary hearing

on whether, by engaging in the apparently undisputed pattern of

threats against a succession of appointed counsel, the defendant

forfeited his right to counsel for the probation revocation

hearing.  At the judge's invitation, counsel -- who minutes

earlier had been allowed to withdraw from representation of the

defendant -- detailed the reasons for his motion to withdraw.

According to counsel, the motion was prompted by a letter from

---

[6] As clarified at the hearing, counsel explained to the defendant the ramifications of a sexually dangerous person proceeding, under which a person convicted of a sex crime could be civilly committed for life.  See G. L. c. 123A, § 14 (d).

the defendant threatening to file complaints against him with the board and the office of the Attorney General.  In response to questioning from the prosecutor and the defendant's newly appointed counsel, the attorney disclaimed any knowledge of the defendant's mental health issues except for what he had been told by the defendant in the days preceding the hearing.  He acknowledged, however, that over the course of his representation, the defendant had engaged in conduct against his advice, including sending the letters to the victim, and that the defendant's behavior was not "logical" and "not in his best interest."

Neither the defendant's new counsel nor the prosecutor presented evidence at the hearing.  Defense counsel, however, advised the judge that he had met with the defendant "for over an hour in the back and [he] was not able to get very far." Counsel described the defendant as being "highly agitated." Without directly addressing the merits of the forfeiture issue, counsel expressed concern with the propriety of forfeiture given what appeared to be the defendant's current mental state and the long-term consequences of a probation revocation hearing without the assistance of counsel.[7]  Counsel repeated what he had been

---

[7] More specifically, defense counsel's caution was prompted by the possible consequences of a probation revocation in the event the defendant were to become the subject of a sexually dangerous person proceeding under G. L. c. 123A.

told by the defendant regarding the recent diagnosis of a "brain tumor," raising the possibility that the defendant's conduct was caused by a mental disability rather than by purposeful oppositional behavior.  Counsel then argued that prior to a hearing on forfeiture, the better course was to require that the defendant be examined for competency and to determine whether the defendant is able to "work with a lawyer," preferably a mental health attorney certified by the Committee for Public Counsel Services.

The judge inquired about competency evaluations of the defendant "in this case and others" and was informed by the prosecutor that the defendant had been examined for competency on at least two occasions during the pendency of the trial proceedings.[8]  In both instances, according to the prosecutor, the defendant had been found competent.

The judge made findings, commencing with the history of the defendant's relationship with the "nine different attorneys"[9] who had been appointed to represent him over the course of the trial and posttrial proceedings.  In reciting this history, the judge

---

[8] The docket reflects that the defendant was evaluated for competency in March, 2007; January, 2008; and August, 2008; and that the defendant was found competent in each evaluation.

[9] The docket entries show that six attorneys, five of whom withdrew their appearances, were appointed to represent the defendant at the trial stage; one attorney was appointed during appellate proceedings; and three attorneys were appointed for the probation revocation matter.

listed each of the attorneys by name and stated the reason why each had been allowed to withdraw from representing the defendant.  The judge found that between the arraignment in 2006 and the trial in 2008, the defendant had been represented by six different attorneys, five of whom had been allowed to withdraw after the defendant had accused them of unprofessional conduct and had threatened to report them to the board.  As to the posttrial probation revocation proceedings, the judge found that the defendant had been represented by three different attorneys who had been subjected to accusations and threats similar to those visited upon the trial attorneys, and that the defendant had been warned that no further counsel would be appointed to represent him.[10]  Except with respect to one trial attorney who had withdrawn in 2007, the judge made no findings that the defendant had threatened physical harm to any of the appointed counsel.  The judge characterized the defendant's conduct toward those attorneys, all of whom are "experienced and skilled" criminal defense lawyers, as "egregious."  Last, the judge found the defendant "lucid" and "responsive" during the earlier exchange regarding counsel's motion to withdraw.  Relying on the prior competency evaluations as reported by the prosecutor, the judge found that "mental health [was not] a mitigating factor."

---

[10] The judge's reference was to the comments of a different judge who, on June 28, 2012, appointed the third attorney to represent the defendant in the probation matter.

Based on these findings, the judge ruled that "this is the rare case where the defendant has forfeited the right to counsel in this probation violation action by his own egregious conduct."  More specifically, the judge relied on the pattern of hostile and threatening conduct consisting mainly of the threat to sue or report counsel to the board, the single threat of violence to a trial attorney, and the prior judge's warning that no new counsel would be appointed to represent the defendant. The judge advised the defendant that the probation revocation hearing would be scheduled forthwith and that the defendant would proceed pro se.

2.  The probation revocation hearing.  Between the forfeiture and probation revocation hearings, a different judge held a hearing on three motions filed by the pro se defendant: a motion to dismiss the probation surrender notice,[11] a motion for medical records from Lemuel Shattuck Hospital, and a motion for funds for a private investigator.  The motion to dismiss was based on the defendant's claim that the letters to the victim did not violate the no-contact condition of probation because he

---

[11] The motion to dismiss was based on the defendant's allegation that the probation department unilaterally changed the condition of probation to entrap him on the probation violation.  This allegation arose from a disparity between the language of the probation contract prohibiting contact with the victim "without permission from the Court" and the trial transcript establishing the condition as no contact "without [the victim's] express permission."

had the victim's permission to send the letters. The defendant sought medical records to establish a causal relationship between his "brain damage" and the letter writing to the victim. The basis of the motion for funds for a private investigator was to "check any future issues as they arise." The judge denied these and subsequent motions filed by the defendant.[12]

Over the course of two days, the judge, who was not the judge who had conducted the forfeiture hearing, conducted the probation revocation hearing, where the sole issue was whether the defendant violated the "no-contact" condition of his probation by sending letters to the victim.[13] On the first day of the hearing, the judge ordered that the defendant be evaluated for competency during the luncheon recess. After interviewing the defendant and reviewing pertinent court records, the court's forensic psychologist opined, "I do believe he has a rational and meaningful understanding of what this hearing is about. I believe he understands the gravity and the

---

[12] The defendant filed fourteen subsequent motions, including a renewed motion for funds for mental health records, a motion for a medical expert, and a motion for permission "to have one hour time with [the victim] after final hearing (with security present if need be) to make 'peace' with her."

[13] The judge relied on the no-contact condition as reflected in the probation contract, which prohibited contact with the victim unless permission was granted by the court. The defendant did not argue that he had sought and received an order vacating or modifying this condition, relying instead on an asserted permission from the victim.

consequences for him.  And I think, to the best of his ability, he is prepared to try to convince the Court about his innocence."  The judge accepted the report and resumed the hearing.

On the first day of the hearing, the victim and her mother testified that the defendant had sent letters to the victim from prison and that neither had consented to contact with the defendant.  The victim witness advocate testified on the second day of the hearing and, in response to the defendant's questions, testified that the victim had "told [her] on a number of occasions that [the victim] does not want to have contact with [him]."  The defendant conceded that he had written letters to the victim but asserted two defenses, permission and necessity,[14] both of which the judge rejected.  At the end of the second day of the hearing, the judge found the defendant in violation of his probation, revoked the probation, and imposed a term of imprisonment.

Discussion.  1.  Forfeiture of the right to counsel.  The defendant argues that the judge erred on both procedural and substantive grounds in ruling that his conduct justified the forfeiture of his right to counsel at the probation revocation hearing.  The defendant argues that the hearing, held on one

_____

[14] Counsel disassociates herself from this argument with support from the record.  See Commonwealth v. Moffett, 383 Mass. 201, 208 (1981).

day's notice, violated his right to due process, in that he was deprived of the opportunity to marshal and present evidence in opposition to forfeiture. He also argues that the judge erroneously considered conduct at the pretrial proceedings in determining that his conduct warranted forfeiture of counsel at the probation revocation hearing scheduled to occur seven years later. The Commonwealth counters that the judge's forfeiture order was proper given the defendant's pattern of threatening conduct toward counsel and because the proceeding involved a probation revocation rather than a trial. We conclude that (1) given the timing, the hearing did not meet the procedural due process requirement of a "full and fair" opportunity to be heard on the issue of forfeiture; and (2) because the defendant's posttrial conduct did not involve either threats of violence or acts of violence toward counsel, his conduct did not warrant the extreme sanction of forfeiture of the right to counsel for the probation revocation hearing. We address each issue in turn.

a. The forfeiture hearing. In Means, we outlined the requirements of the forfeiture hearing, explaining its importance as a predicate to the denial of a defendant's fundamental constitutional right to counsel. There, we said that "[b]ecause the consequences of forfeiture of counsel are so severe, the sanction of forfeiture should not be imposed until the defendant has had a full and fair opportunity at a hearing

to offer evidence as to the totality of circumstances that may bear on the question of whether the sanction of forfeiture is both warranted and appropriate." Means, 454 Mass. at 97. Beyond the broad command that due process requires notice and an opportunity to be heard, the court in Means further specified that (1) the judge should hear evidence regarding the alleged conduct that may give rise to a finding of forfeiture; and (2) the defendant has the right to "offer evidence, and to cross-examine witnesses, both as to the allegations of his misconduct and the totality of the circumstances that may bear on the forfeiture finding, including his mental competency and psychological condition, any other mitigating considerations, and the willingness of appointed counsel to continue the representation." Id.

The forfeiture proceeding was properly initiated by notice "directing the defendant to appear at a hearing to show cause why the court should not order forfeiture of his right to appointed counsel." Id. The hearing, however, was not sufficiently protective of the defendant's due process right to a "full and fair" hearing where the timing of the hearing, one day after the issuance of the show cause order, imposed unacceptable limitations on the defendant's right to present evidence on the totality of circumstances, including mental disability, bearing on the issue of forfeiture. See id. At the

very least, the "full and fair opportunity at a hearing to offer evidence as to the totality of circumstances" bearing on the issue of forfeiture requires an opportunity for the defendant to consult fully with counsel and for counsel to marshal evidence relevant to the conduct underlying the forfeiture.  Id.  Neither of these minimum requirements for a fair hearing was met.

The judge conducted the hearing on one day's notice with newly appointed defense counsel.  Counsel, who met the defendant for the first time on the day of the hearing, reported that he had spoken to the defendant "for over an hour in the back and [he] was not able to get very far."[15]  While we do not intend to suggest that a one-day notice is never appropriate, it is evident, however, that in the circumstances of this case, where a potential defense to forfeiture was the defendant's mental disability, the one-day notice was simply too short to effectuate the defendant's right to a "full and fair" hearing. The defendant was entitled to raise the issue of his mental disability in his response to the show cause order, and the court was obligated to consider it.  That much is clear from Means, 454 Mass. at 97.  Implicit in the right to present a defense is a fair opportunity to marshal facts in support of the claim.  Counsel, faced with a defendant claiming a serious

---

[15] The defendant was incarcerated at the time of the hearing, presumably limiting counsel's options in arranging an interview prior to the hearing.

mental disability that surely was suggested by the history of his conduct, was obligated to marshal all the relevant facts and present the defense on the defendant's behalf. The mental disability defense suggested by counsel's brief interview with the defendant likely would require medical records and perhaps expert testimony, neither of which was available to counsel after the one-day notice of the hearing.[16]

Further, where forfeiture is at issue, Means imposes an affirmative obligation to investigate a defendant's mental condition through a competency hearing or waiver inquiry "[w]here 'there is some indication of mental disorder or impairment sufficient to create a "bona fide doubt" as to the defendant's ability to make an informed decision to proceed without counsel.'" Id. at 96, quoting Commonwealth v. Barnes, 399 Mass. 385, 389 (1987). The information available to the judge from the colloquy with the defendant and from counsel regarding the possibility that the defendant might have a mental disorder was sufficient to require further inquiry into the

---

[16] The record reflects that, after the forfeiture hearing, the defendant attempted to obtain medical records that, he indicated, would demonstrate a "cystic brain tumor" and other brain damage that affected his behavior. The motion judge denied the defendant's motion for medical records from the Lemuel Shattuck Hospital, where the defendant claimed the diagnosis had been made. Thus, it is not possible to say whether such records actually exist.

defendant's ability to proceed without counsel.  See Means, supra.

Specifically, the judge had invited the defendant to respond to counsel's motion to withdraw earlier in the hearing, and the defendant alluded to a serious mental condition when he told the judge that he had been diagnosed with a "brain tumor" that was causing him to have difficulty "putting things into words."  Prior counsel testified at the hearing that he was unaware of any current mental disorder but acknowledged that he had been told of the claimed brain tumor and that the defendant's conduct was not "logical" or otherwise in his best interest.  Newly appointed counsel reiterated the defendant's claim of a brain tumor and appropriately requested that the defendant be evaluated to determine if he was competent and whether he could work with an attorney before any ruling on forfeiture.  Counsel suggested that, if true, this condition, rather than a purposeful oppositional behavior, might explain the defendant's inability to cooperate with counsel.  Thus, the matter of the defendant's mental state, whether it involved competency or a mental disability related to the asserted brain tumor, was highly relevant to the forfeiture issue.

The judge found that the defendant was "lucid" and "responsive" in his exchange with the court regarding counsel's withdrawal and that the defendant's mental health was not a

factor weighing against forfeiture.  This finding was based in part on competency evaluations that had been completed five years earlier.  We doubt the reliability of the prior competency evaluations as evidence of the defendant's more recent or then-current mental condition which, in the circumstances of this case, was a required factor in the court's forfeiture analysis.

First, competency and mental illness are distinct concepts, each of which may bear on the propriety of forfeiture.  In Commonwealth v. Chatman, 473 Mass. 840 (2016), we explained that the focus of competency is the defendant's "functional abilities" rather than "the presence or absence of any particular psychiatric diagnosis."  Id. at 846-847, quoting Commonwealth v. Goodreau, 442 Mass. 341, 350 (2004).  Thus, the competency inquiry is (1) whether the defendant has a "sufficient present ability to consult with his [counsel] with a reasonable degree of rational understanding," and (2) whether he has a "rational as well as factual understanding of the proceedings."  Chatman, supra at 847, quoting Commonwealth v. Harris, 468 Mass. 429, 443 (2014).  On the other hand, we noted in Means that a court considering forfeiture should exercise caution in applying a "single mental competency standard" in determining whether a defendant may be permitted to represent himself.  Means, 454 Mass. at 96, quoting Indiana v. Edwards, 554 U.S. 164, 175 (2008).  We recognized that, as here, a mental

disability or mental illness, quite apart from competency, may be a factor in the forfeiture analysis in appropriate cases. There, we said that "[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." Means, supra, quoting Edwards, supra. Thus, while competency is important to the forfeiture issue, it is not dispositive.

Second, even if competency were the sole relevant issue, a five year old competency evaluation would not suffice to inform the required evaluation of the defendant's mental condition at the time of the forfeiture order. Put simply, it was not possible, based on the earlier competency evaluation, to determine whether the defendant, at the time of forfeiture, had a mental disability as he claimed.

To be clear, we agree with the Appeals Court that the "judge was not required to credit the defendant's unsupported claim that his mental state was impaired by 'a brain tumor deep within the center of [his] brain,'" Gibson, 87 Mass. App. Ct. at 834, but the judge should at least have given counsel a reasonable opportunity to marshal any evidence there might be to establish that there was or was not a bona fide issue of competency either at that time or when prior counsel withdrew. The defendant's mental condition should not have been left to

speculation, particularly when the constitutional right to counsel was at risk.

b. The forfeiture decision. Although we conclude that the forfeiture hearing did not comport fully with the procedural due process protections we mandated in Means, we nonetheless address the merits of the judge's forfeiture decision. We do so to clarify the nature of the conduct required for forfeiture and to emphasize the necessity to determine whether, given the totality of the circumstances, forfeiture is in the interests of justice.

In reviewing a judge's forfeiture order, we defer to the judge's findings of fact but we conduct an "independent determination of the correctness of the judge's application of constitutional principle to the facts found." Means, 454 Mass. at 88, quoting Commonwealth v. Currie, 388 Mass. 776, 784 (1983). Although a probationer does not enjoy the full panoply of rights guaranteed to a defendant in a criminal trial, Commonwealth v. Durling, 407 Mass. 108, 112 (1990), we have determined that "whenever imprisonment palpably may result from a violation of probation, 'simple justice' requires that, absent waiver, a probationer is entitled to assistance of counsel." Commonwealth v. Patton, 458 Mass. 119, 125 (2010), quoting Williams v. Commonwealth, 350 Mass. 732, 737 (1966).

In Means, 454 Mass. at 92, we articulated the guidelines to be applied in ordering forfeiture, explaining that any such

decision is to be made in light of the over-arching principle that "[f]orfeiture is an extreme sanction in response to extreme conduct that imperils the integrity or safety of court proceedings."  The guidelines require consideration of four factors:  (1) whether the defendant has had the services of more than one attorney; (2) the type of proceeding in which forfeiture is ordered; (3) the type of conduct offered as the basis for forfeiture; and (4) the availability of a less restrictive measure or whether forfeiture is a last resort.  See id. at 93-95.  The issue for the judge after hearing all the evidence and making findings and rulings is the application of the two-part test:  "whether the defendant's conduct was so egregious as to warrant the sanction of forfeiture, and, if so, in view of the totality of circumstances, whether the sanction of forfeiture is in the interests of justice."  Id. at 97.

    We glean from the judge's findings and rulings that the forfeiture order was grounded largely on his determination that over the course of the proceedings, from trial up to and including the probation violation hearing, the court had appointed nine different attorneys to represent the defendant and that seven of those attorneys had been permitted to withdraw because of the defendant's pattern of verbally threatening conduct against them.  The judge found significant as well that the defendant had threatened physical violence against one of

the trial attorneys.  Thus, the judge focused on the first and third factors in his forfeiture decision.[17]

It would be an understatement to say that over the course of the seven years between the defendant's arraignment and the forfeiture order, the defendant's turbulent relationship with his withdrawing attorneys demonstrated an extraordinary inability or unwillingness to cooperate with counsel. Therefore, we have no quarrel with the judge's frustration with what could have been a tactical ploy by the defendant to delay the resolution of the matter likely to result in the revocation of his probation and the imposition of a State prison sentence. And we recognize that cases in which defendants consistently find frivolous reasons to withhold their cooperation from appointed counsel can and must be dealt with appropriately.  See Commonwealth v. Appleby, 389 Mass. 359, 366-367, cert. denied, 464 U.S. 941 (1983), quoting Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976) (assistance of counsel not absolute, and

---

[17] Regarding the second factor, we recognize that forfeiture of counsel at a probation revocation hearing "does not deal as serious a blow to a defendant as would the forfeiture of counsel at the trial itself." Commonwealth v. Means, 454 Mass. 82, 94 (2009), quoting United States v. Leggett, 162 F.3d 237, 251 n.14 (3d Cir. 1998), cert. denied, 528 U.S. 868 (1999).  Nonetheless, we need not address the broader question of the types of proceedings that might weigh more heavily in assessing the validity of a particular forfeiture decision.  In this case, where the defendant's liberty interests are at stake in a fact-dependent probation revocation proceeding, the right to counsel attaches with full force.

"refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver"). We conclude, however, that the forfeiture order in this case was erroneous for two reasons. First, the defendant's conduct, consisting mainly of threats to report counsel to the board over a seven-year period, was not sufficiently "egregious" to warrant forfeiture. Second, even if the defendant's conduct met the threshold for forfeiture, the judge failed to consider whether forfeiture was in the interests of justice, the second prong of the two-part test for forfeiture.

In elaborating on the particular conduct warranting forfeiture, we noted in Means, 454 Mass. at 94, that "forfeiture may be an appropriate response to the defendant's threats of violence or acts of violence against defense counsel or others." We focused more narrowly on conduct involving "threats of violence or acts of violence" in deference to the rationale underlying the forfeiture doctrine: a court's ability to respond to conduct that "imperils the integrity or safety of court proceedings." Id. at 92, 94. Violence or threats of violence pose obvious threats to the "integrity or safety of court proceedings" that must be timely addressed in a firm and fair manner. Id. at 92.

Except for the threat of violence to one trial attorney, the defendant did not engage in such conduct in relation to the

attorneys appointed to represent him. Without question, the defendant's conduct created an annoyance of the highest order for counsel and an obstacle to the court's effort to efficiently dispose of its docket in the interest of public safety. However, where the defendant's conduct mainly involved threats to file lawsuits or complaints against the attorneys with the board, we discern no peril to the "integrity or safety of [the] court proceeding[]," such as would likely inhere in a threat of violence or an act of violence. Means, 454 Mass. at 92. We find it significant as well that the one threat of violence against an attorney was far removed in time from the probation revocation proceeding. Thus, we adhere to the view expressed in Means that violence or the threat of violence is the touchstone for a forfeiture order. See id. at 94. Because the defendant's conduct did not meet this test, the forfeiture order was erroneous.

Last, we emphasize that if a judge determines that a defendant has engaged in "egregious" conduct that warrants forfeiture, he or she must also determine if, given the totality of the circumstances, forfeiture is "in the interests of justice." Means, 454 Mass. at 97. This requirement embodies the concern that forfeiture be imposed only as a "last resort" and only "when less restrictive measures are inappropriate" (citation omitted). Id. at 95. It is a mandate to look beyond

the defendant's "egregious" conduct to the consequences of forfeiture on the defendant's fundamental right to the assistance of counsel.  Thus, in any case where forfeiture is ordered, the better practice is to clarify for the record that all of the guidelines have been appropriately considered and that forfeiture is in the interests of justice.

We hasten to add that a judge facing a pattern of hostile conduct from an uncooperative defendant is not without a remedy. Where a defendant persists in finding fault, without reason, with a succession of appointed counsel, the court may in appropriate circumstances consider whether to apply the doctrine of waiver by conduct.  Means, 454 Mass. at 90, citing Commonwealth v. Babb, 416 Mass. 732 (1994) (recognizing "waiver of counsel by conduct, occasionally termed abandonment of counsel").  The waiver by conduct doctrine requires that the judge must first conduct a colloquy with the defendant warning the defendant of the consequence that he or she may lose the right to counsel if he or she engages in abusive conduct (such as threats to sue or complain to the board) toward the attorney.[18]  If the defendant thereafter engages in the conduct

_____

[18] In the circumstances of this case, however, this remedy was not available to the judge at the forfeiture hearing, as the judge at the prior hearing did not conduct a colloquy suited to a waiver by conduct.  Although the prior judge had warned the defendant that another attorney would not be appointed for him,

about which he or she was warned, the act may be treated as "an implied request to proceed pro se and, thus, as a waiver of the right to counsel." Means, supra at 91, quoting United States v. Goldberg, 67 F.3d 1092, 1100 (3d Cir. 1995).

2. The probation revocation hearing. On appeal, the defendant argues that he is entitled to a new hearing based on the judge's error in limiting his right to cross-examine the victim and her mother and denying his motion for funds to procure certified copies of his medical records and for an expert to interpret those records. In view of our determination that the order forfeiting the defendant's right to counsel must be vacated and that the matter must be remanded, we bypass these issues except to note that where, as here, the defendant's mental condition is asserted as a factor in both the forfeiture and the violation, the defendant is entitled to a fair opportunity to procure and present this evidence on remand.

Conclusion. For the reasons stated above, the forfeiture order and the order revoking the defendant's probation are vacated. The matter is remanded to the Superior Court for a

---

it does not appear -- at least with sufficient clarity -- that this warning was intended to trigger the waiver by conduct rule. Rather, it appears more likely that that judge had added the warning to encourage the defendant's cooperation with counsel, as the warning was given only after the judge had been informed of the delay in the probation revocation proceeding caused by the withdrawal of two prior court-appointed attorneys.

forfeiture hearing at which the defendant may offer evidence of his mental condition as a defense to forfeiture. Regardless of the outcome of the forfeiture hearing, the defendant is entitled to a de novo probation revocation hearing.

<u>So ordered</u>.