NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-1747                                    Appeals Court

ADOPTION OF RAISSA.[1]


No. 16-P-1747.

Suffolk.     September 19, 2017. - June 22, 2018.

Present:  Vuono, Blake, & Singh, JJ.


Parent and Child, Adoption, Dispensing with parent's consent to adoption.  Adoption, Dispensing with parent's consent.  Minor, Adoption.  Due Process of Law, Adoption, Assistance of counsel.  Constitutional Law, Assistance of counsel, Waiver of constitutional rights.  Practice, Civil, Assistance of counsel, Waiver, New trial.



Petition filed in the Suffolk County Division of the Juvenile Court Department on November 27, 2013.

The case was heard by Stephen M. Limon, J., and a motion for a new trial was also heard by him.


Cara M. Cheyette for the mother.
Brian R. Pariser for Department of Children and Families.
Andrea Peraner-Sweet (Kate C. Billman-Golemme also present) for the father.
Rizwanul Huda for the child.


---

[1] A pseudonym.

SINGH, J. As a result of her mother's incarceration, three year old Raissa was left without a guardian, leading the Department of Children and Families (department) to file a care and protection petition. Following a trial in the Juvenile Court, the judge found the mother to be unfit and terminated her parental rights. The mother appeals, claiming that she was denied due process when she was required to proceed to trial without counsel. She also appeals from the denial of her motion for new trial, primarily claiming she received ineffective assistance from the nine attorneys who were successively appointed to represent her. We affirm.

Background. On November 26, 2013, the mother was arrested at the scene of a motor vehicle accident. She was allegedly driving under the influence of alcohol when she struck a woman and her seven year old child; the woman was seriously injured, and the child was killed. The mother was held without bail on criminal charges arising out of the incident.[2] As no one could be located to take immediate custody of Raissa, the department filed a petition for care and protection in the Juvenile Court. Ultimately, Raissa was placed with her father, who obtained

_____

[2] At the time of the March, 2016, trial in Juvenile Court, the mother had been indicted for manslaughter, motor vehicle homicide, operating a motor vehicle while under the influence causing serious bodily injury, leaving the scene of an accident involving property damage, and assault and battery by means of a dangerous weapon.

permanent custody, and the mother's parental rights were terminated.[3]  The mother remained in custody on the criminal matter during the pendency of the Juvenile Court proceedings.

In November, 2013, the judge appointed an attorney to represent the mother.  In March of 2014, that attorney moved to withdraw at the request of the mother and indicated that an irretrievable breakdown in communication had occurred.  The mother requested that another attorney be appointed to represent her.  Over the course of the following year, three additional attorneys were successively appointed to represent the mother.  She effectively discharged each of them by requesting each to withdraw from her case.[4]

In February, 2015, the judge appointed a fifth attorney to represent the mother.  At a May, 2015, pretrial hearing, the mother refused to enter the court room.  In July, 2015, within weeks of the scheduled trial, the fifth attorney moved to

---

[3] At the time the care and protection petition was filed, Raissa's biological father, who did not reside in the United States, was seeking a judgment establishing his paternity.  Over the mother's objection, he was adjudicated the father of Raissa by the Probate and Family Court in September, 2014, and then afforded full party status in the ongoing care and protection proceeding.  After a period of transition from foster care, Raissa was placed with her father (who had relocated to Massachusetts) in February, 2015.

[4] Of these four attorneys, three indicated that the mother had explicitly requested them to withdraw, while one stated that she was unable to repair the relationship after the mother had expressed her belief that there was a serious breakdown in communication between them.

withdraw at the direction of the mother. At a hearing on July 1, 2015, the mother initially refused to enter the court room. The attorney cited the mother's refusal to attend court proceedings and her insistence on speaking in Spanish, rather than in English (although they had always communicated in English in the past without any difficulty), as additional grounds for withdrawal. The mother was eventually persuaded to come into the court room on that day,[5] and the judge asked her about her ability to communicate in English. Speaking in English, the mother stated that her first language was Spanish; however, she agreed that she could speak and understand English well. The judge then advised the mother that he was going to appoint a sixth attorney for her, that she had to communicate in English with the new attorney, and that he was going to schedule a new trial date that would give the new attorney sufficient time to prepare.

At the same hearing, the judge heard the mother's complaints about her attorneys. The mother complained that her current attorney would not provide her with copies of certain

---

[5] In an effort to coax the mother into attendance, the judge appointed a guardian ad litem (GAL) for the mother and asked him to speak with the mother. After speaking with the GAL, the mother agreed to come into the court room and speak with the judge on the condition that no other party or their counsel would be present. All parties consented to this procedure. The judge found that the mother's "responses and questions" in English were "perfectly formed, unaccented[, and] colloquial."

documents. The judge explained that issues of confidentiality prevented the attorney from doing so. He told the mother that he would not continue the case again and that, if she could not cooperate with the new attorney, she would have to represent herself at trial. He discouraged self-representation in favor of reliance on competent counsel with expertise in the field. He emphasized the important stakes involved, namely the ability of the mother to have custody of her child, and the importance of finality, particularly for Raissa.

On September 30, 2015, the mother's sixth attorney moved to withdraw, citing an irretrievable breakdown in communications with his client. The attorney indicated that the mother had written a letter instructing him to withdraw and then had refused to meet with him when he attempted to visit with her to discuss the matter. The judge allowed the attorney to withdraw. He also ordered a court clinic evaluation (evaluation) of the mother's competency to represent herself, in the event that she intended to do so. In the event that the mother was still seeking successor counsel or at least standby counsel, the judge appointed a seventh attorney to represent the mother.[6] The trial was rescheduled for January 21, 2016. A month before the trial

---

[6] The judge had previously appointed the seventh attorney as the GAL for the mother. See note 5, supra.

date, however, the seventh attorney also moved to withdraw, indicating that the mother had discharged him.

On January 21, 2016, the mother appeared for the court hearing, representing herself (with her seventh attorney present as standby counsel) and speaking through a Spanish language interpreter. The mother complained that the seventh attorney had not worked on the case as she had requested. She asked the judge to appoint another attorney, to give her the assistance of a Spanish language interpreter, and to allow her to complete the evaluation. The judge arranged for the evaluation,[7] continued the trial, and appointed an eighth attorney to represent the mother, emphasizing that the trial must take place on the next scheduled date.

On March 30, 2016, the next scheduled trial date, the eighth attorney moved to withdraw at the mother's request. The attorney cited an irretrievable breakdown in communication as well as ethical issues with continued representation. The judge allowed the attorney to withdraw.

---

[7] Since the mother stated that she intended to proceed at trial with a lawyer, the judge changed the focus of the previously ordered evaluation from an assessment of her competency to represent herself at trial to an assessment of her psychological functioning relating to parental fitness. On appeal, the mother claims that the judge abused his discretion in changing the nature of the evaluation in the circumstances. As the mother herself acknowledges, however, the completed evaluation concluded that the mother did not suffer from any kind of mental illness or impairment. There was no abuse of discretion in the judge's handling of the evaluation.

The judge then considered the mother's request for a Spanish language interpreter.  After finding that the mother did not need the services of an interpreter due to her exhibited proficiency in English, both in her communications with the judge and her attorneys, the judge then excused the interpreter, who had been present in the court room.  The judge asked the mother whether there was any reason that the trial should not go forward as planned.  After the mother failed to answer the judge's repeated questions, he noted that the mother was "sitting there and is not responding in any way."  Finding that the mother had engaged in dilatory tactics to delay trial, the judge ordered the trial to proceed.  He appointed a new attorney to act as standby counsel to assist the mother in representing herself at trial.  After a recess called to allow the mother to confer, standby counsel reported that the mother spoke only in Spanish, and that they could not communicate.

Trial commenced.  The first witness was the family preservation program director at the Massachusetts Correctional Institution in Framingham (MCI-Framingham), where the mother was being held.  She testified that her conversations with the mother had been in English and that she had observed the mother communicating with other MCI-Framingham staff members in English.  The department called additional witnesses and submitted documents in evidence.  When given the opportunity to

cross-examine each witness, the mother spoke only in Spanish.
After the department rested, the judge asked the mother whether
she wanted to testify or present witnesses, but she responded
only in Spanish. The mother did submit documents with the
assistance of standby counsel. The trial concluded and the
judge later issued a notice of decision determining that the
mother was unfit and terminating her parental rights. The
father was determined to be fit, and permanent custody of Raissa
was awarded to him.

Discussion. 1. Waiver of right to counsel.[8] "An indigent
parent in a G. L. c. 210, § 3, proceeding has a constitutional
right to counsel. Department of Pub. Welfare v. J.K.B., 379
Mass. 1, 2-5 (1979)." Adoption of William, 38 Mass. App. Ct.
661, 663 (1995). Because the "loss of a child may be as onerous
a penalty as the deprivation of the parents' freedom," Custody
of a Minor (No. 1), 377 Mass. 876, 884 (1979), courts have
looked to the criminal law in deciding issues of individual
rights in care and protection cases, including the right to

---

[8] In her brief, the mother assails the judge's dismissal of
the interpreter as evidencing "insensitivity," but makes no
distinct legal argument relating to the denial of a request for
an interpreter. See Commonwealth v. Vargas, 475 Mass. 338, 355-
356 (2016) (party claiming right to interpreter has burden of
proving entitlement). In view of the mother's exhibited
proficiency in English, there was no abuse of discretion or
error in the judge's determination that the mother was not
entitled to an interpreter. See G. L. c. 221C, §§ 1-2 ("non-
English speaker" entitled to interpreter).

counsel.  See Adoption of William, supra.  As in a criminal proceeding, however, a parent may waive the right to counsel either explicitly, see id. at 664, or, as here, through conduct. See Commonwealth v. Means, 454 Mass. 81, 89-92 (2009).  See also Commonwealth v. Babb, 416 Mass. 732, 735 (1994) (defendant's refusal to proceed with appointed counsel without good cause constitutes abandonment).

Waiver by conduct may occur where a parent engages in misconduct after having been warned by the judge that such behavior will result in the loss of the right to counsel.  See Commonwealth v. Gibson, 474 Mass. 726, 741 (2016).  "The key to waiver by conduct is misconduct occurring after an express warning has been given to the [parent] about the [parent's] behavior and the consequences of proceeding without counsel" (emphasis in original).  Means, 454 Mass. at 91.  With "substantial deference" to the trial judge's factual findings related to the loss of the right to counsel, we review the judge's determination of waiver of counsel de novo.  Id. at 88.

Here, the judge found that the mother either fired or failed to communicate with each of the eight attorneys appointed to her, which resulted in their need to withdraw.  After the appointment and withdrawal of five attorneys, the judge conducted a colloquy with the mother, warning her that she would have to cooperate with her sixth attorney because she would not

be appointed another one, and she would consequently have to proceed pro se. The judge detailed the difficulties with self-representation and emphasized the important stakes involved. Despite the warning, the mother was appointed two additional attorneys, whom she also discharged. Finding the mother to have engaged in the same behavior which the judge had previously warned would result in the loss of counsel, the judge concluded that the mother had waived the right to counsel through her conduct and proceeded to trial.

On appeal, the mother first claims that the judge erred in finding that she fired her lawyers. She points out that she never filed a single motion seeking a change in counsel; instead, the attorneys made the motions (which were supported by their affidavits). However, seven out of eight of the attorneys averred in their submissions that they moved to withdraw at the direction of the mother.[9] The judge was entitled to credit these affidavits. See Adoption of Paula, 420 Mass. 716, 730 (1995) (judge's findings with clear record support accepted on appeal). See also Means, 454 Mass. at 93 n.19 ("Where trouble in an attorney-client relationship extends through multiple counsel, it is less likely that the disquiet is due to the particular

---

[9] The mother contends that the serial withdrawal of counsel violated rules of professional responsibility. Once the mother discharged counsel, it was appropriate for the attorneys to seek to withdraw. See Mass.R.Prof.C. 1.16(a)(3), as appearing in 471 Mass. 1396 (2015).

attorney-client relationship, and more likely that the difficulty is due to the client's intransigence or misconduct").

The mother next contends that the colloquy with the judge on July 1, 2015, was "too hypothetical and stale" to suffice as adequate warning of what would happen at trial on March 30, 2016, if she persisted in her behavior.[10]  She also contends that the judge failed to describe with adequate specificity the type of behavior that would result in the loss of appointed counsel. The record does not support this assertion.  The judge's colloquy with the mother clearly focused on the number of attorneys who had been appointed and had withdrawn due to an irretrievable breakdown in communication.

In reviewing the adequacy of the warning, we also consider the judge's findings that the mother had prior experience with court proceedings, including the paternity action pertaining to the child (see note 3, supra), restraining order proceedings, and various criminal matters.  She also had a college degree and was described as "very bright and articulate."  See Commonwealth v. Appleby, 389 Mass. 359, 368, cert. denied, 464 U.S. 941 (1983) (background, experience, and conduct of litigant and

_____

[10]  It is preferable, if possible, to give, or repeat, the warning close to the time of trial.  We recognize that this was an unusual and protracted situation.  Here, the judge displayed extraordinary patience in appointing additional attorneys to represent the mother after he had warned her that continued failure to cooperate with counsel would result in her proceeding without counsel.

circumstances of case may be considered in waiver analysis). The warning was adequate, given the mother's particular circumstances. See Commonwealth v. Pamplona, 58 Mass. App. Ct. 239, 242 (2003). Thus, the colloquy was sufficient to warn the mother that any further decision to discharge counsel without good cause would be considered problematic misconduct and that if she thwarted another counsel's efforts to represent her, she would face the consequence of representing herself.

Finally, the mother contends that her conduct did not justify denying her counsel. She points out that there was no indication that she was violent or threatening to anyone. "The acts leading to waiver by conduct need not be violent, but they must be highly disruptive of orderly or safe proceedings." Means, 454 Mass. at 91. Repeated changes in counsel delay proceedings because of the need for each new attorney to become familiar with the client and the case; consequently, they interfere with orderly proceedings. See Appleby, 389 Mass. at 366-368 (motion for new counsel employed as delay tactic); Commonwealth v. Clemens, 77 Mass. App. Ct. 232, 237 (2010) ("most common problem accompanying a request for a change of counsel is the need for a continuance of the trial").[11]

---

[11] Notwithstanding the successive discharge and appointment of counsel, we agree with the mother that some of the delay was attributable to the fact that the paternity proceedings were ongoing for part of the time in question.

When faced with this situation, it is within the trial judge's broad discretion to take reasonable measures to keep the proceedings moving forward, even if the result is to leave the defendant, or in this case the parent, without counsel.  When taking such action, "[t]he judge must weigh the constitutional protections of a [parent] against the interest of orderly trial administration."  Commonwealth v. Kenney, 437 Mass. 141, 150 (2002).  See Commonwealth v. Pena, 462 Mass. 183, 192-195 (2012) (judge did not violate probationer's right to counsel when he required him to proceed pro se with standby counsel in interest of judicial efficiency, where probationer "refused" services of succession of court-appointed counsel and probationer thereafter was "purposefully . . . trying to delay" proceedings).

In cases involving the termination or curtailment of a parent's rights, there is an additional, competing consideration, beyond the mother's right to counsel -- the rights of the child.  "[R]ecognition of important parental rights does not change the 'crucial fact' that the focus of proceedings that terminate or curtail parental rights should be the best interest of the child."  Adoption of Olivia, 53 Mass. App. Ct. 670, 677 (2002).  See Custody of Two Minors, 396 Mass. 610, 617 (1986) (children's right to stable and safe environment equally as important as parent's interest in fair proceedings).

It follows that "[n]o cases of any kind have a greater claim for expedition at all stages than those involving care and custody of children." Custody of a Minor, 389 Mass. 755, 764 n.2 (1983). See Care & Protection of Quinn, 54 Mass. App. Ct. 117, 122 (2002) (judge did not abuse discretion in declining father's request to continue care and protection trial where "[o]ther interests, specifically the paramount interests of the children involved, argued against delay"). There was no error.

2. Motion for new trial. Following entry of the decree terminating the mother's parental rights, the mother filed a pro se motion for new trial, claiming that (a) she received ineffective assistance of counsel, (b) the evidence was insufficient to sustain the judge's decision, and (c) there were manifest errors at trial, depriving her of due process.[12]

After a hearing, at which the mother represented herself (with the assistance of standby counsel), the judge denied the

---

[12] On appeal, the mother raises additional issues not raised below, which we briefly address, although we need not do so. See Adoption of Larry, 434 Mass. 456, 470 (2001) (issues raised for first time on appeal not preserved for appellate review). The admission of the G. L. c. 119, §§ 51A and 51B, reports from one year before the petition, filed "to set the stage," was not error. See Custody of Michel, 28 Mass. App. Ct. 260, 267 (1990). In any event, there was other competent evidence, from a variety of sources, of the mother's alcohol-related issues.

We also note that there was no impropriety in the judge reviewing the transcript of the paternity trial, offered by the father, to help assess the mother's English language fluency.

motion.  We review the denial of a motion for new trial for an abuse of discretion.  See Adoption of Marc, 49 Mass. App. Ct. 798, 801 (2000) (review of denial of posttrial motion for abuse of discretion).

a.  Ineffective assistance of counsel.  "Ineffective assistance of counsel contentions in care and protection proceedings are assessed by determining 'whether the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer" and, if so, . . . "whether [counsel's conduct] has likely deprived the defendant of an otherwise available, substantial ground of defence."'  Care & Protection of Stephen, 401 Mass. 144, 149 (1987), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974)."  Adoption of Mary, 414 Mass. 705, 712-713 (1993).

In her motion for new trial, the mother set out a litany of complaints against her lawyers, primarily revolving around their failure to take action to challenge the father's paternity and parental fitness.  On appeal, the mother argues that "the lack of representation at the paternity trial created a record that could be, and was, weaponized against her."  Given that the lawyers did not represent her in the paternity action and that the Probate and Family Court's adjudication of paternity could not be challenged in the Juvenile Court, the lawyers were not deficient in declining to pursue these requests.

As to issues of the father's fitness, the mother raised her concerns with the department, which investigated them and found no support for them.  To the extent that the concerns involved criminal allegations, they were further raised with law enforcement authorities, which also investigated and found no support for them.  Despite her claims about the father's alleged shortcomings, the mother failed to establish that better work on the part of trial counsel would have yielded anything material, either in her attempt to undermine the father's position or in defense of her own fitness to parent.  There was no abuse of discretion or error of law in the denial of the mother's motion for new trial on this ground.

b.  Clear and convincing evidence.  A judge may only terminate parental rights if he determines, first, that the parent is unfit, and second, that termination would be in the best interests of the child.  See Adoption of Nancy, 443 Mass. 512, 514-515 (2005).  We review the judge's findings with substantial deference, recognizing the judge's discretion to evaluate witness credibility and the evidence.  Id. at 515.  Subsidiary findings must be proved by a preponderance of the evidence, and will not be disturbed unless clearly erroneous.  Ibid.  The critical finding of unfitness must be proved by clear and convincing evidence.  Ibid.  We review to discern any abuse

of discretion or clear error of law on the part of the trial judge. See Adoption of Ilona, 459 Mass. 53, 59 (2011).

The judge determined that the mother was unfit due to unaddressed mental health and alcohol abuse issues, which placed Raissa in danger and ultimately left her without a guardian. He found that the mother failed to cooperate with the department in any way, even revoking permission for representatives of the department to visit her while she was in custody so that they could discuss a plan for reunification.[13] He also found that the mother demonstrated a vacillation of feeling toward the child and placed her own needs above that of the child. By contrast, the judge found that Raissa had developed a strong, nurturing bond with the father and was thriving in his care. The judge further found that the animosity the mother had demonstrated toward the father, including denying his paternity on the child's birth certificate, precluded any possibility that the mother and father would be able to coparent the child. These findings were supported by the record.[14]

---

[13] The mother's decision to block department representatives from visiting her resulted in her inability to have visits with the child. Instead of simply cooperating with the department, the mother attempted to have the foster parent arrange visits without the knowledge of the department. When this plan did not succeed, the mother refused to reverse course. The result was that the mother had not seen the child for more than two years by the time of trial.

[14] In her motion for new trial, the mother made some additional arguments regarding the evidence but has not pressed

c.  Manifest errors at trial.  On appeal, the mother alleges that the judge erred in denying her motion for new trial on the basis that the trial was infected with structural error, resulting from the denial of counsel.  In her motion for new trial, the mother accused the various attorneys of lying to the judge in representing that she had demanded them to withdraw. She claims that the attorneys withdrew because they were unwilling to do the work requested of them.  The judge considered these claims and provided his reasoning in rejecting them.  Given our disposition of the mother's claim of denial of counsel, supra, we need not address this issue any further, other than to note that the judge was well within his discretion in rejecting the mother's contentions.

Decree affirmed.

Order denying motion for
    new trial affirmed.

them on appeal.  We do not address them here.  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).