NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1161

ADOPTION OF BLAIR.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal involves the welfare of Blair, who was born in October 2013.  A Juvenile Court judge found the father unfit to care for Blair and terminated his parental rights.  The judge also approved the department's proposed plan of recruitment of an adoptive family for Blair.  The father appealed.  A few months later, the father filed a motion for new trial, pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), primarily asserting that his trial counsel was ineffective.  After a hearing, the judge denied the father's motion.  The father again appealed, and the appeals were consolidated in this court.  We affirm both the decree and the denial of the new trial motion.

---

[1] A pseudonym.

Discussion. 1. Termination of parental rights. We begin with the father's appeal from the termination decree. The father argues that the judge's findings that he is unfit do not support that conclusion by clear and convincing evidence because the evidence of his criminal activity was stale, and there was no evidence that he directed any criminal activity toward Blair, nor was there a sufficient nexus between his criminal issues and Blair's well-being. We disagree.

"To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). When reviewing such determinations, the judge's assessment is entitled to deference. See Adoption of Nancy, 443 Mass. 512, 515 (2005).

The father has a criminal record spanning twenty-one years that includes convictions of violent offenses and weapons

2

possession, and he has spent between five and ten years incarcerated.[2]  In fact, it was the father's periods of incarceration -- including the roughly seven-year period from 2014, when the mother obtained a lifetime restraining order against the father on behalf of herself and Blair, to 2022, when the father first sought modification of that restraining order -- that impacted his relationship with Blair and rendered him unavailable to care for her.[3]  There was enough evidence of criminal activity over that prolonged period for the judge to conclude that it would continue indefinitely.  Additionally, the father "has been unavailable and uninvolved in [Blair's] life since her birth."  For instance, he was incarcerated at the time of Blair's birth, had never lived with her, and had no existing relationship with her.  On multiple occasions, the father violated restraining orders the mother obtained, and most of those violations resulted in further incarceration.  See Adoption of Serge, 52 Mass. App. Ct. 1, 8 (2001) ("Physical

---

[2] Specifically, the father has been found guilty on fifty-six offenses in three States and has defaulted forty-seven times in Massachusetts.

[3] The judge also properly considered the father's history of domestic violence in determining his unfitness.  Although the father argues there was no nexus to Blair, he ignores the fact that his pattern of violence led to the restraining orders.  Thus, without the father's history of violence, there would have been no legal prohibition from him seeing or forming a relationship with Blair.

unavailability of the parent to provide day to day care for the child, including for reasons of incarceration, was relevant evidence of unfitness").

As to the father's argument regarding insufficient evidence, we conclude that the judge relied upon clear and convincing evidence of the father's failure to cooperate with the department or meaningfully engage in services for the purpose of reunification with Blair.  The father failed to complete any of the tasks outlined in his action plan, which included, among other things, that he stop engaging in illegal conduct, complete parenting and domestic violence classes, engage in a neurological evaluation, and participate in therapy or counselling.[4]  See Adoption of Luc, 484 Mass. 139, 147 (2020) (parent's failure to recognize need for or to engage consistently in department treatment plan is "relevant to the determination of unfitness" [citation omitted]).  The father has also failed to obtain stable housing.

The judge also made extensive findings supporting his conclusion that termination of the father's parental rights would be in Blair's best interests.  For example, the judge

_____

[4] The judge acknowledged that the father may have participated in some betterment programs while incarcerated. Regardless, any participation was not specifically aimed at addressing the department's concerns.  Thus, the judge did not err in his conclusion that the father did not substantially comply with his action plan.

4

noted that concerns remained regarding the father's "parenting capabilities, domestic violence, aggression, and criminal conduct" because he failed to meaningfully engage with the department's action plan and did not understand the extent of Blair's needs.  Additionally, since Blair's placement at a department foster care home, she "has made great strides."[5] Despite some challenges that require therapeutic services at home and school, Blair has shown increased independence as her foster parents are able to manage her prescribed medications. Blair enjoys playing with dolls, doing puzzles and crafts, and using electronics.

Based on the clear and convincing evidence and considering the best interests of the child, the judge did not clearly err or abuse his discretion in finding that the father was unfit to parent Blair or in terminating his parental rights.

2.  Ineffective assistance of counsel.  We turn next to the father's appeal from the judge's denial of his motion for a new trial.  The father argues that his trial counsel was ineffective

---

[5] In May 2023, the department changed Blair's permanency plan goal from reunification to adoption.  As of the date of the judge's findings of fact and conclusions of law, the department had not yet identified an adoptive resource for Blair.  The department planned to refer Blair to a unit for adoption recruitment in Massachusetts.  The department was seeking a two-parent home for Blair, ideally with parents well-versed in taking care of her specific diagnoses.

for failing to file a motion to modify the lifetime restraining order the mother had obtained on behalf of herself and Blair, failing to introduce favorable evidence, and failing to challenge the department's lack of reasonable efforts. We disagree.

"We review the denial of a motion for new trial for an abuse of discretion." Adoption of Raissa, 93 Mass. App. Ct. 447, 455 (2018). To prevail on an ineffective assistance claim, the father was required to show first that counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer," and if so, that counsel's conduct caused him prejudice. Care & Protection of Georgette, 439 Mass. 28, 33 & n.7 (2003), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The judge found that from approximately 2014 to 2022, the father never saw Blair and never attempted to change the terms of the lifetime restraining order. However, the father maintains that he attempted to modify that order in 2022 and 2023. He argues that his trial counsel was ineffective by failing to investigate the District Court docket, which would have substantiated the father's testimony that he attempted to modify the restraining order in 2022 and 2023.[6]

---

[6] Of note, at trial, the judge did not credit the father's testimony that he attempted to modify the restraining order.

6

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Commonwealth v. Conley, 43 Mass. App. Ct. 385, 392 (1997), quoting Strickland v. Washington, 466 Mass. 668, 691 (1984). However, counsel is also afforded the opportunity to make reasonable decisions that certain investigations are unnecessary. See Commonwealth v. Tavares, 491 Mass. 362, 366 (2023). Here, introduction of the District Court docket sheets would have rendered the father's testimony inconsistent and not credible, because the father testified at trial that he attempted to modify the order in 2021. There is no evidence that counsel failed to investigate the docket nor is there evidence that counsel's decision not to introduce evidence of the father's attempted modifications was anything but strategic. Additionally, as the father had been convicted of violating that restraining order, he cannot satisfy his burden, because even if counsel had attempted to terminate the restraining order as to Blair, the father has not shown that counsel likely would have been successful in doing so. See Commonwealth v. Comita, 441 Mass. 86, 91 (2004) (defendant claiming ineffective assistance of counsel based on counsel's failure to take action must show likelihood that action "would have been successful").

7

Turning to the father's argument that his counsel was ineffective for failing to raise the issue that the department failed to make reasonable efforts to reunify the father and Blair, we likewise disagree. The department is "obligated to use reasonable efforts to preserve the biological ties between [a parent] and child"; however, that duty is "contingent upon the [parent's] fulfillment of [their] own parental responsibilities." Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997). See G. L. c. 119, § 29C. We agree with the judge that the father is unable to show prejudice from counsel's failure to press the reasonable efforts claim. Addressing this claim, the judge made findings that the department communicated with the father by providing him with action plans while he was incarcerated and after his release and by making him aware of the procedures for monthly check-ins with the department. The department's social worker also attempted to contact the father. However, the father failed to respond to communication with the department, failed to participate in his action plan tasks, and he did not establish his paternity until 2023. Thus, any effort

8

to challenges the department's reasonable efforts would have been unsuccessful.  The judge did not abuse his discretion in denying the motion for new trial.

_Decree affirmed_.

_Order denying motion for new trial affirmed_.

By the Court (Massing, Englander & D'Angelo, JJ.[7]),

_Paul Pettic_

Clerk

Entered:  April 24, 2025.

---

[7] The panelists are listed in order of seniority.