ADOPTION OF OLIVIA
(and a companion case[1]).

No. 01-P-357.

Worcester. September 10, 2001. - January 28, 2002.

Present: GILLERMAN, CYPHER, & COHEN, JJ.

*Practice, Civil,* Assistance of counsel. *Constitutional Law,* Assistance of counsel, Waiver of constitutional rights. *Parent and Child,* Adoption, Custody, Dispensing with parent's consent to adoption. *Minor,* Adoption, Custody, Visitation rights. *Waiver. Adoption,* Dispensing with parent's consent, Parent's consent, Visitation rights. *Moot Question.*

In proceedings under G. L. c. 210, § 3, to dispense with a father's consent to the adoption of his minor children, the Probate Court judge did not abuse her discretion in denying the father's motion to change appointed counsel, where the reasons advanced by the father did not constitute good cause for removal of appointed counsel; where the judge balanced the competing interests, in particular the reason the father sought to change counsel and the children's need for resolution after more than three years in custodial uncertainty; and where the father was not forced into a choice of proceeding with unprepared counsel or proceeding pro se. [673-676, 677]

In proceedings under G. L. c. 210, § 3, to dispense with a father's consent to the adoption of his minor children, there was sufficient evidence to conclude that the father's waiver of his right to counsel was knowing, intelligent, and voluntary. [676-677]

In proceedings under G. L. c. 210, § 3, to dispense with a father's consent to the adoption of his minor children, the Probate Court judge properly considered the statutory factors bearing on the fitness of the father, and the judge's subsidiary findings supported a conclusion, by clear and convincing evidence, that the father's current unfitness would continue upon his release from prison. [677-678]

On appeal from proceedings in the Juvenile Court on a petition under G. L. c. 119, § 26, for care and protection of minor children, this court concluded that both the children's father's claim that his rights to visitation in the underlying proceedings were erroneously terminated and his appeal from the dismissal of his complaint for contempt were moot. [678-679]

PETITION filed in the Worcester Division of the Juvenile Court Department on January 14, 1997.

---

[1]Adoption of Zack. Robert, the oldest child, is now over the age of eighteen and is not a party to this appeal. All the children's names are fictitious.

The case was heard by *Jan L. Najemy*, J., and motions for civil contempt were heard by her.

PETITION filed in the Worcester Division of the Probate and Family Court Department on May 6, 1998.

The case was heard by *Susan D. Ricci*, J.

*Alan D. Campbell* for the father.

*Christopher O. Quaye*, Assistant Attorney General, for the Department of Social Services.

*Garry M. O'Brien* for the children.

CYPHER, J. In January, 1997, the Department of Social Services (DSS) filed a care and protection petition in the Juvenile Court, under G. L. c. 119, § 26, regarding the father's children, Robert, Olivia, and Zack. In September, 1997, the juvenile court judge found the children in need of care and protection and granted permanent custody to DSS. The juvenile court judge also terminated the father's visitation with the children and dismissed his complaint against DSS for contempt. In May, 1998, DSS filed a petition in the Probate Court, under G. L. c. 210, § 3, to dispense with parental consent to adoption of the two minor children, Olivia and Zack. After a two-day trial in June, 2000, the judge found by clear and convincing evidence that the parents were currently unfit and severed their parental rights, dispensing with the need for consent to or notice of any petition for adoption.

We have consolidated the father's appeals from both proceedings.[2] The father claims that he was denied his right to counsel in the Probate Court when the judge denied his motion to change appointed counsel, and the father elected to represent himself. In addition, the father argues that the Probate Court judge's determination that he will continue to be unfit upon his release from prison is not supported by clear and convincing evidence. The father argues that the Juvenile Court judge erroneously terminated his visitation rights and erroneously dismissed his complaint for contempt against DSS. We affirm the Probate Court decree and reject the father's claims regarding the Juvenile Court orders because they are moot.

1. *Proceedings in the Probate Court.* In August, 1998, at the

[2]The mother does not appeal.

beginning of the proceedings in the Probate Court, a judge appointed an attorney to represent the father. Eleven months later, the attorney was permitted to withdraw his appearance, after differences developed with the father, and the father stated that he was not satisfied with the attorney's efforts. Within the span of a month, the court appointed two other attorneys, but each declined the appointment before filing an appearance. In August, 1999, Attorney Christopher LoConto was appointed to represent the father.

Seven months after LoConto's appointment, the father filed seven pro se motions, including one to appoint new counsel. At a hearing in February, 2000, before a different judge, the father explained that he was dissatisfied with LoConto because LoConto would not file certain motions as requested by the father and had not provided the father with particular files and reports. The father admitted that counsel had discussed the motions with him in person and had explained that they needed to be "brushed up," but he was displeased with counsel's explanations. The judge warned the father of the dangers of proceeding pro se and of the high stakes involved to the father. The judge also expressed concern about how a change in counsel would further delay the case and how that delay would affect the children. The judge told the father that he would probably deny his motion to change counsel, and so the father's choice would be to proceed with LoConto or represent himself. The father elected to continue with LoConto.

LoConto met with the father and filed motions on his behalf. In March, 2000, LoConto met with the children at the father's request after the father stated that he would abide by the children's wishes with regard to custody. The father gave LoConto a list of questions to ask the children to help determine the children's wishes about custody, which LoConto incorporated into the interview. The guardian ad litem (GAL), who also attended the meeting, found the children "extremely articulate" and "very, very clear on their wishes" to stay with their pre-adoptive family. After the meeting, LoConto brought open adoption paperwork to the father as part of their previous agreement. The father refused to sign the paperwork.

In May, 2000, approximately three weeks before trial was

scheduled to begin, LoConto moved for leave to withdraw because of a complete breakdown in communication with the father. The father filed a motion to replace counsel. The judge conducted a hearing and questioned the father, LoConto, the GAL, and the attorney for the children. The GAL stated that the children's mental health would be jeopardized by any further delay. The judge probed the father's reasons for wanting to change attorneys, which consisted of LoConto's failure to file redundant motions and make redundant requests for experts, as well as LoConto's advice that the father should agree to an open adoption plan rather than go to trial.

The judge emphasized the risk of proceeding pro se. The judge observed that this was not the first time the father was unhappy with counsel and that LoConto, as well as the other court-appointed attorneys, were all very experienced in this area. The judge stated, "Well sir, nobody's been effective. We've been doing this since 1998 and I can't just seem to choose an effective attorney for you, according to you. . . . There is no reason to expect an attorney to be able to come up to speed in three weeks and I will not continue the trial. It is too important to everyone. To you, wanting your side of the story heard; . . . but most importantly to [Zack] and [Olivia]." The father stated that he did not really want to proceed pro se. The judge denied the father's motion to replace counsel and presented the father with the option of continuing with LoConto or representing himself. The father decided to represent himself, and the judge granted LoConto's motion to withdraw.

2. *The denial of the motion to change counsel and the defendant's election to represent himself.* The father contends that the judge abused her discretion in failing to appoint new counsel, thereby depriving the father of the right to effective assistance of counsel during the hearing to terminate his parental rights. Specifically, the father claims that the judge erroneously focused on the number of attorneys appointed to the father and was overly concerned with the date of the trial. We conclude that the judge did not abuse her discretion in denying the motion.

Parents have a constitutionally protected fundamental interest in their relationship with their children. *Santosky* v. *Kramer*,

455 U.S. 745, 753 (1982). *Opinion of the Justices*, 427 Mass. 1201, 1203 (1998). As a result of that interest, an indigent parent is entitled to court-appointed counsel in proceedings that terminate parental rights.[3] *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 1-2 (1979). *Care & Protection of Stephen*, 401 Mass. 144, 149 (1987). That right, however, is not absolute. *Custody of Two Minors*, 396 Mass. 610, 617 (1986).

Because the termination of a parent's relationship with his or her child may be as severe a deprivation to that parent as the loss of personal freedom,[4] *Custody of a Minor (No. 1)*, 377 Mass. 876, 884 (1979), we have turned to the criminal case law of this Commonwealth for guidance in deciding issues involving the right to counsel in proceedings to terminate parental rights. See *Care & Protection of Stephen*, 401 Mass. at 149 (applying the *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 [1974], standard for ineffective assistance of counsel); *Adoption of Mary*, 414 Mass. 705, 712-713 (1993) (same); *Adoption of William*, 38 Mass. App. Ct. 661, 663-664 (1995) (waiver of right to

---

[3]While the right to counsel in criminal proceedings and in termination of parental rights proceedings may be analogous in some circumstances, they have different origins. See *Adoption of William*, 38 Mass. App. Ct. 661, 663 n.3 (1995). The right to counsel for indigent criminal defendants is based on the explicit guarantee of the Sixth Amendment, as incorporated to the States through the Fourteenth Amendment to the United States Constitution. *Gideon* v. *Wainwright*, 372 U.S. 335, 342 (1963). *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50 (1976). The right to counsel for indigent parents, however, is derived from statute, G. L. c. 210, § 3, and has been identified by the Supreme Judicial Court as a procedural due process right of the Fourteenth Amendment and art. 10 of the Declaration of Rights of the Massachusetts Constitution. *Department of Pub. Welfare* v. *J.K.B.*, *supra* at 3-4.

[4]The Supreme Judicial Court has "repeatedly rejected incorporating the full panoply of constitutional rights afforded criminal defendants into proceedings involving custody and termination of parental rights." *Adoption of Don*, 435 Mass. 158, 169 (2001). See, e.g., *Custody of a Minor*, 375 Mass. 733, 746 (1978) (double jeopardy does not apply); *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 384 Mass. 707, 710-711 (1981) (exclusionary rule does not apply); *Petition of Dept. of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 699 (1984) (beyond a reasonable doubt standard of proof does not apply); *Custody of Two Minors*, 396 Mass. at 617 (privilege against self-incrimination does not apply); *Adoption of Don*, *supra* (right to face-to-face confrontation of child witness does not apply). Compare *Adoption of John*, ante 431, 435-436 (2001) (parent's consent to adoption in the course of termination proceeding must be knowing and voluntary).

counsel in a termination of parental rights proceeding must be voluntary, unequivocal, knowing, and intelligent).

We turn again to criminal decisions for guidance in determining whether the judge abused her discretion when she denied the father's motion to change counsel. The decision on a motion to change counsel is committed to the trial judge's sound discretion, which should be exercised only after the defendant has been given an adequate opportunity to state his grounds for seeking discharge of counsel. See *Commonwealth* v. *Lee*, 394 Mass. 209, 217 (1985); *Commonwealth* v. *Chavis*, 415 Mass. 703, 712 (1993).

The right to counsel does not include the right to dictate who shall be appointed, although a motion for substitution of counsel should be allowed if the defendant demonstrates good cause. See *Commonwealth* v. *Drolet*, 337 Mass. 396, 400-401 (1958); *Commonwealth* v. *Babb*, 416 Mass. 732, 735 (1994); *Commonwealth* v. *Moran*, 17 Mass. App. Ct. 200, 204 (1983). If a motion for substitution of counsel is properly denied, the court may then confront the defendant with the choice of continuing with appointed counsel or acting pro se. *Id.* at 205.

The reasons advanced by the father did not constitute good cause for removal of appointed counsel. See *Care & Protection of Stephen*, 401 Mass. at 149; *Commonwealth* v. *Moran*, 17 Mass. App. Ct. at 206-207. "Good cause includes, but is not limited to, 'a conflict of interest, incompetence of counsel, or an irreconcilable breakdown in communication.' " *Commonwealth* v. *Britto*, 433 Mass. 596, 600 (2001) (citation omitted). A party with court-appointed counsel cannot turn his perceived lack of a meaningful relationship into grounds for discharging his lawyer. *Commonwealth* v. *Moran, supra.* The judge explicitly found that counsel was prepared and implicitly found counsel effective.

When the judge's comments are considered in context, it is apparent that she did not place too much weight on the number of attorneys or the proximity of the trial, which was scheduled to begin in three weeks. Rather, the record indicates that she balanced the competing interests, in particular the reason the father sought to change counsel and the children's need for resolution after more than three years in custodial uncertainty. Additionally, the father was not forced into a "Hobson's

choice" of proceeding with unprepared counsel or proceeding pro se. Contrast *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 51, 53-54 (1976) ("myopic insistence" on expedience rendered the right to counsel "an empty formality" where counsel was unprepared). We conclude that the judge did not abuse her discretion when she denied the defendant's motion to discharge counsel. See *Commonwealth* v. *Chavis*, 415 Mass. at 711; *Adoption of William*, 38 Mass. App. Ct. at 665-666.[5]

We also conclude that, when the father elected to represent himself rather than proceed with LoConto, he abandoned or waived his right to counsel. See *Babb*, 416 Mass. at 735. Refusal without " 'good cause to proceed with able appointed counsel is a "voluntary" waiver' . . . of [the] right to counsel." *Commonwealth* v. *Appleby*, 389 Mass. 359, 366-367, cert. denied, 464 U.S. 941 (1983), quoting from *Maynard* v. *Meachum*, 545 F.2d 273, 278 (1st. Cir. 1976). Compare *Care & Protection of Marina*, 424 Mass. 1003 (1997) (where parent abandoned participation in parental rights proceedings, the court need not consider whether the petitioner's nonaction was a voluntary, knowing, and intelligent waiver of his right to counsel).

The father has the burden of proving by a preponderance of the evidence that his waiver of counsel was not valid. *Adoption of William*, 38 Mass. App. Ct. at 664. "The validity of [the] waiver depends on the particular facts and circumstances of each case." *Ibid*. Although a specific inquiry on the record concerning the defendant's understanding of the consequences of the waiver is preferred, it is not required because a finding that the waiver was knowing and intelligent may rest on "a complex of factors." *Commonwealth* v. *Higgins*, 23 Mass. App. Ct. 552, 556 (1987). See *Adoption of William*, *supra* at 664.

There are sufficient indicia on the record to conclude that the father's waiver of his right to counsel was knowing, intelligent, and voluntary. The father had intimate experience with court procedures and demonstrated a familiarity with the system, as evidenced by his pro se motions. *Commonwealth* v. *Higgins*, 23

---

[5]LoConto's request to withdraw was granted after the father's motion for new counsel was denied. As in criminal cases, it would be preferable, if possible, for counsel to be retained in an advisory role during the trial. *Commonwealth* v. *Martin*, 425 Mass. 718, 720 n.2 (1997).

Mass. App. Ct. at 556. On two separate occasions, the father was made aware of the "dangers and disadvantages of self-representation." *Commonwealth* v. *Cavanaugh*, 371 Mass. at 53. See *Adoption of William*, 38 Mass. App. Ct. at 665-666. Additionally, "the father's frequent involvement with the criminal justice system was likely to make him sensitive to the important role counsel plays in court proceedings having serious consequences." *Id.* at 666.

Finally, and perhaps most significant, the recognition of important parental rights does not change the "crucial fact" that the focus of proceedings that terminate or curtail parental rights should be the best interest of the child. See *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. at 5. See *Opinion of the Justices*, 427 Mass. at 1203. In such proceedings, "the balance to be struck is more complex," requiring courts not only to make an accommodation between the rights of the individual parent and the interest of society but also the rights and needs of the child. *Department of Pub. Welfare* v. *J.K.B.*, *supra* at 5. The children's rights to a stable and safe environment, therefore, assume an importance at least equal to the parent's interest. See *Custody of Two Minors*, 396 Mass. at 617. See also Strengthening Abuse and Neglect Courts Act of 2000, 114 Stat. 1266 (2000) (establishing explicitly that a "child's health and safety shall be the paramount consideration when any decision is made regarding a child in the Nation's child welfare system").

3. *The finding of parental unfitness.* The father does not challenge the subsidiary findings but claims that they do not support a conclusion, by clear and convincing evidence, that the father's current unfitness will continue past his incarceration. We summarize the facts found by the judge.

The children experienced a tumultuous period long before the DSS action. The children witnessed verbal and physical abuse between their mother and father. Both parents have long-term problems with substance abuse. The mother obtained three separate restraining orders (one each in 1994, 1995, and 1996) against the father. The father was also violent toward the children.

In February, 1996, the father attacked the mother at work, stabbing her in the neck and head with scissors. The children

moved with their mother into their maternal grandmother's home. Soon thereafter, DSS received two G. L. c. 119, § 51A, reports for neglect and the children were temporarily and then permanently removed from the parents' custody. The father was found guilty of assault with intent to kill and, as a result, has been incarcerated since 1996. While in prison, the father has participated in available services for help with his substance abuse problems, his anger, and his violent tendencies.

Olivia and Zack fear Robert, who sexually abused both of them and tortured animals in front of them. The father denied that Robert ever sexually touched or abused Olivia and Zack, despite DSS's substantiation of the abuse. The father hopes to reunite Olivia and Zack with Robert upon his release from prison.

Olivia, who is now fourteen, and her brother Zack, who is now thirteen, have lived with their preadoptive family since August, 1999. Both children are attached to their preadoptive parents, wish to be adopted by them, and do not want any contact with their parents or Robert.

The judge found that the father had been unable to provide proper care for the children and that there was no reasonable expectation, given the children's age, that he would be able to provide proper care or custody within a reasonable time. He also found that, even if the father were released from prison, he lacks the capacity to meet the special needs of the children and is unable to appreciate the psychological damage they have suffered.

The trial judge properly considered the statutory factors bearing on the fitness of the father. See G. L. c. 210, § 3(*c*). The findings were supported by the record, and taken together, constituted the clear and convincing evidence required to dispense with parental consent to adoption. See *Adoption of Sherry*, 435 Mass. 331, 339 (2001).

4. *The visitation order and the dismissal of the father's complaint for contempt.* The father's claim that the court erroneously terminated his rights to visitation in the underlying proceedings brought pursuant to G. L. c. 119, § 26, and his appeal from the dismissal of his complaint for contempt are moot.

Adoption of Olivia.

See *Adoption of Simone*, 427 Mass. 34, 45 (1998); *Adoption of Helen*, 429 Mass. 856, 864 (1999).

> *Decrees of the Probate Court affirmed.*
>
> *Appeals from orders of the Juvenile Court dismissed as moot.*