This appeal arises from the decrees issued on three petitions for private adoption brought pursuant to G. L. c. 210, §§ 3 and 6. The petitions concern three children: Cassius, born in January, 2006; Amanda, born in February, 2007; and Stephanie, born in November, 2010. The petitioners, the children's mother and her husband, the children's stepfather, sought decrees terminating the parental rights of the children's father and dispensing with the need for the father's consent to the adoption of the children by the stepfather. Following a trial at which the petitioners, the father, and the maternal grandmother testified, a judge of the Probate and Family Court determined that the father was currently unfit to parent the children and that it was in the best interests of the children to be adopted by the stepfather. As a result, the petitions were granted and decrees entered accordingly. The father appealed. He later obtained a stay, and he then filed a motion for a new trial in which he claimed that trial counsel was ineffective. The motion was denied by the trial judge, who also denied a motion for reconsideration. The father's appeal from the denial of those motions was consolidated with his appeal from the decrees. For the reasons that follow, we affirm the decrees and the denial of the motions for a new trial and reconsideration.
Background. We summarize the judge's findings of fact, reserving additional facts gleaned from the record for later discussion. The mother and father were married in 2005, and divorced in 2012. Their marriage was neither healthy nor happy. Although the father worked long hours, the family struggled financially. When the father was home, he spent many hours playing video games, to which he was addicted. Cassius, Amanda, and Stephanie were born during the course of the marriage. In addition, the mother's daughter from a previous relationship, Catherine,[3] lived with the family. In 2013, a jury convicted the father of two counts of indecent assault and battery on Catherine. He subsequently pleaded guilty to additional criminal offenses, including rape of a child.[4] At the time of trial, the father was incarcerated at the Massachusetts Treatment Center at Bridgewater. See note 8, infra.
The judge found that even though the father was incarcerated, and despite having been awarded joint legal custody of the children after the divorce, the father did not seek to have contact with the children or participate in decisions concerning them. While the mother initially brought the children to visit the father in prison, the father did not pursue any legal remedy to maintain a relationship with the children when she stopped doing so. By contrast, the stepfather has a good relationship with the children and treats them with care. The judge also found that the petitioners are meeting the children's financial and emotional needs.
Discussion. 1. Father's direct appeal. At the close of the petitioners' case, the father's counsel orally moved to dismiss the petitions, claiming that the petitioners had failed to meet their burden of proving current parental unfitness by clear and convincing evidence. The motion was denied. On appeal, the father challenges this decision and again argues that the evidence of his current unfitness was insufficient.
As the father correctly notes, the burden of proving current parental unfitness is always on the petitioner. See Adoption of Larry, 434 Mass. 456, 470 (2001). That burden was amply met in this case.[5] It suffices to note the extent to which the father neglected and abused the children when he was in the home. The mother's testimony established that the father's relationship with the children lacked empathy and was devoid of any understanding of their needs. She provided numerous instances of the father's physical and emotional abuse of the children, and she described the lasting negative effects of the father's behavior on the children's health and well-being.[6]
This same evidence supports the judge's conclusion regarding the father's current unfitness to parent the children. The judge was entitled to rely on the father's prior behavior in determining current parental unfitness. See Adoption of Virgil, 93 Mass. App. Ct. 298, 301 (2018). Furthermore, it was undisputed that the father absented himself from the children's lives for a lengthy period of time as a result of his intentional criminal conduct toward Catherine. The judge also found that the father's failure to take responsibility for his criminal conduct "places any child in the family at risk of at least neglect if not abuse."[7] In addition, the judge noted that the father had taken no steps to enforce his legal rights to the children and had not provided any financial support to the children since 2013. Lastly, as the judge correctly observed, as a result of his convictions, the father cannot assume the duties and responsibilities required of a parent for a significant period of time.[8] See Adoption of Olivia, 53 Mass. App. Ct. 670, 678 (2002) (decrees terminating father's rights affirmed where father was incarcerated and "there was no reasonable expectation, given the children's age, that he would be able to provide proper care or custody within a reasonable time").[9]
We are not persuaded that the judge erred in issuing decrees dispensing with the need for the father's consent to the adoption of the children by the stepfather. "Here we have a case where the children are finally in [a] stable situation[ ]."[10] Adoption of Nancy, 443 Mass. 512, 517 (2005). The children's "various personal and education issues" are the subject of "appropriate interventions" by the petitioners, with whom, as the father concedes in his brief, the children have an "established life." The father further acknowledges that the children have formed strong bonds with the stepfather.[11] "The children's rights to a stable and safe environment" are "at least equal" to the father's interest in preserving his parental rights. Adoption of Olivia, supra at 677. In this case, we agree with the judge that these children deserve permanence and stability, "which will be eased by termination of their father's rights." Adoption of Nancy, supra. We note the judge properly considered the statutory factors set forth in G. L. c. 210, § 3(c ), and found factors (ii), (vi), (vii), (viii), (ix), (x), (xi), (xii), and (xiii) to be applicable to his decision to terminate the father's parental rights. His findings are supported by the record, and they constitute the clear and convincing evidence required to dispense with the need for parental consent to adoption. See Adoption of Olivia, supra at 678.
2. Motion for a new trial. As indicated, the father filed a motion for a new trial on the basis of ineffective assistance of trial counsel, claiming that his attorney failed to (1) prepare a defense, (2) prepare him to testify, (3) introduce his treatment records or his pro se complaint in which he sought contact with the children, and (4) consult with an expert in forensic psychology. Additionally, the father faulted trial counsel for not moving to reopen the evidence or to request a stay of entry of the decrees.
The motion, which the judge treated as one filed pursuant to Mass.R.Civ.P. 60(b)(6), 365 Mass. 828 (1974),[12] was supported by affidavits from the father and appellate counsel, records from the Massachusetts Treatment Center at Bridgewater which documented the father's participation in treatment while incarcerated, a copy of a complaint for modification and a motion for temporary visitation and communication (complaint) the father attempted to file pro se in which he sought, among other things, visitation with the children, and correspondence with the clerk's office related to the complaint.[13] The father also submitted a report prepared by Dr. Leonard Bard, a nationally recognized expert in the field of forensic psychology, who was retained by appellate counsel to evaluate the father's risk of reoffending. After interviewing the father for two hours and reviewing (1) police reports related to the father's criminal conduct, and (2) the father's treatment records, Dr. Bard "employed an adjusted actuarial approach to the issue of risk assessment" and concluded that the father "appears to be at low risk to re-offend sexually." The father requested an evidentiary hearing on his motion.
The judge reviewed the father's claim of ineffective assistance under the familiar two-prong test set forth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).[14] After conducting "a side-by-side analysis of the file and particularly the findings of fact," and, relying on his memory of the trial and pretrial proceedings, the judge concluded that trial counsel was not ineffective primarily because none of the evidence offered in support of the motion "would ... have altered the outcome." As the judge explained, even if he had been made aware of the father's attempt to have contact with the children by filing a complaint, his conclusion regarding unfitness would not have changed. The judge further concluded that evidence which, if believed, demonstrated that the father has a low risk of reoffending would have had no bearing on his analysis because the father's criminal history "is less a question of father potentially reoffending than what has been the impact upon the children from his conduct."[15] The judge also rejected the father's claim that an expert in forensic psychology, like Dr. Bard, would have helped him demonstrate at trial that he had taken responsibility for his sexual abuse of Catherine. We agree with the judge that this is a dubious assertion, especially in light of the fact that the father reported to Dr. Bard that then eight year old Catherine initiated sexual contact with him.[16] As regards the failure to introduce the father's treatment records, we again agree with the judge that, to the extent the decision not to introduce the records reflects a trial strategy, it was a good one. The treatment records support a conclusion that the father lacks insight into his behavior.[17]
We have conducted a careful review of the record and conclude that the judge did not abuse his discretion in denying the motion or declining to hold an evidentiary hearing.[18] See Knott v. Racicot, 442 Mass. 314, 326 (2004) (judge not required to hold evidentiary hearing on rule 60 [b] motion); DeMarco v. DeMarco, 89 Mass. App. Ct. 618, 622 (2016) (judge's ruling on rule 60 [b][6] motion reviewed for abuse of discretion).
3. Conclusion. The decrees terminating the father's parental rights to Cassius, Amanda, and Stephanie, and dispensing with the need for his consent to their adoption, are affirmed. The orders denying the father's motions for relief from judgment and for reconsideration are affirmed.
So ordered.
Affirmed

A pseudonym.

The judge found that the father was incarcerated for "a 2013 indecent assault and battery on" Catherine. However, the docket sheet from the father's criminal case, which was introduced in evidence, indicates that a jury convicted the father of two counts of indecent assault and battery on a child and that he pleaded guilty to four counts of rape and abuse of a child. On the indecent assault and battery convictions, the father was sentenced to serve two to three years' imprisonment in a State prison followed by four years of probation. On the remaining convictions, the father was sentenced to serve three to five years' imprisonment in a State prison, from and after the two to three year sentence of incarceration, followed by five years of probation. Thus, the father received a cumulative sentence of from five to eight years' incarceration followed by five years of probation.

The father's claim that the judge shifted the burden of proof to him requires little discussion. The judge did not call upon the father to prove anything. To the contrary, the judge correctly understood that the petitioners could prevail only if they established the father's current unfitness.

The mother testified that during the marriage the father would spend time with his friends instead of coming home after work. When he was home, he would play video games and have almost no interaction with the children. The children "wouldn't be changed" and would be "locked in their bedrooms" when the mother left them in the father's care, and the father "continuously" used his cellular telephone (cell phone). After he was incarcerated, the mother discovered two pornographic videos on the father's cell phone, which the mother determined had been recorded from Catherine's television and the family's computer. In one of the videos the children can be heard in the background "crying and banging on the door." The mother testified that the father hung pornographic pictures in the garage to which the children had regular access, that the father missed Amanda's first birthday party because he was playing video games, and that, while Amanda was toilet training, the father would get aggravated with her for soiling her pants and would "throw" her into a cold shower. As a result, Amanda "will not get into a shower without knowing what the temperature is and feeling it a hundred times." The mother testified that, "emotionally, these children have been through hell." Amanda "reacts badly" when she hears the father's name and "has severe flashbacks," Cassius "had an outburst" and broke the bathroom door when he heard that the mother was attending court, and both Cassius and Amanda have been diagnosed with posttraumatic stress disorder due to "trauma [that] occurred before the age of six."

Contrary to the father's assertion, the judge did not unfairly penalize him for his sexual abuse of Catherine. The judge's determination of unfitness was not based solely on the father's criminal convictions. Instead, the judge considered it significant that, by virtue of his sentence, see note 3, supra, the father will not have the "ability, capacity, [or] readiness" to parent his children for at least ten years. Adoption of Nancy, 443 Mass. 512, 515-516 (2005), quoting from G. L. c. 210, § 3(c).

Upon his release, the father will be on probation, a condition of which is that he "have no unsupervised direct or indirect contact with any child under the age of 16 in any manner, including physical contact, verbal contact, or contact by electronic means."

The father also claims that the judge's erroneous findings that he was arrested and incarcerated in 2013, instead of 2012, and that he is incarcerated at "MCI Bridgewater" instead of the Massachusetts Treatment Center at Bridgewater, demonstrate that the judge failed to give the evidence close attention. We disagree. These minor errors do not detract from the judge's ultimate determination.

Although the judge made no finding on the issue, the mother testified that the family struggled financially and moved five times in six years while the father was in the home.

Although the judge did not make a specific finding to this effect, the mother testified that the children identify the stepfather as their father and that Stephanie, who was two when the father was arrested, "has always known [the stepfather] as her father and no other father."

"We look to rule 60(b) by analogy and as a cogent standard because the Massachusetts Rules of Civil Procedure do not apply to proceedings to dispense with consent to adoption." Adoption of Rory, 80 Mass. App. Ct. 454, 455 (2011).

The complaint was filed on August 20, 2013, while the father was incarcerated at MCI-Norfolk. The father sought monthly visitations at the prison, written communication, and weekly telephone calls with the children. The father marked the motion for a hearing six days later. On August 22, 2013, process was returned to the father because (1) the hearing date he selected was less than seven days away, (2) the father did not include his telephone number, and (3) the father did not fill in the caption on the summons. No further action appears to have been taken with respect to the complaint.

The Saferian test requires a judge to first examine "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." 366 Mass. at 98. Second, the judge must examine whether such behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." Ibid. "The Saferian test for evaluating the effectiveness of counsel is an appropriate standard to apply in care and protection proceedings."Care & Protection of Georgette, 439 Mass. 28, 33 (2003).

The judge stated: "The father assaulted a step-sibling of these children. Their lives have been unalterably changed as a result of his criminal conduct."

The father told Dr. Bard that he was tucking in Catherine and had his hand on her stomach when "she pushed his hand downward and he did not do or say anything. This became their 'routine' for the next month and he was able to utilize cognitive distortions to 'allow' himself to continue those behaviors. He began to touch her vaginal area and engaged in 'clitoral stimulation' although he denied ever penetrating her with his fingers. He then began to perform oral sex on her, approximately once a month, and continued that pattern for a period of time." The father denied ever having her touch his penis or exposing his penis to her.

The records contain notations by the instructors encouraging the father to "develop an insightful understanding of himself" and "gain additional insight." Following a class he completed eight months before trial, the father was encouraged to "continue addressing his use of limited thinking patterns."

The remaining alleged shortcomings of trial counsel have not been overlooked. We conclude that they do not amount to serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer, and, therefore, do not provide a basis for granting a new trial.