NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1454

ADOPTION OF HERA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from a decree issued by a Juvenile Court judge finding her unfit to parent her daughter, Hera, terminating her parental rights, and approving the plan of the Department of Children and Families (DCF) for the adoption of the child by her foster parents.  The mother contends that the judge erred in (1) denying her counsel's motion to withdraw and (2) finding that DCF met its evidentiary burden at trial to prove parental unfitness.  We affirm.

Background.  We summarize the judge's findings of fact, reserving certain details for later discussion.[2]  Hera was born

---

[1] A pseudonym.

[2] The judge made 128 "specific and detailed findings" and thirty-four conclusions of law in support of her decision to terminate the mother's parental rights, which "demonstrate that close attention has been given the evidence."  Custody of

in January 2018.  In April 2018, a report was filed pursuant to G. L. c. 119, § 51A (51A report), alleging neglect of Hera. DCF's ensuing investigation revealed the mother was not following the rules of the shelter in which she was residing with Hera; notably, on multiple occasions, the mother left the oven door open while it was on in order to heat the living space, even after being told to refrain from doing so.  The mother's noncompliance jeopardized her placement at the shelter. DCF also learned that Hera was not up to date with her medical appointments and that the mother was not showing up to scheduled appointments.  DCF's investigation resulted in a finding of substantiated concern, and DCF opened a case for services for both the mother and Hera.

In December 2018, another 51A report was filed alleging neglect of Hera due to concerns that she smelled of marijuana and did not have an appropriate amount of food or clothing when she was dropped off at day care.  DCF learned the mother was occasionally leaving Hera in the maternal grandmother's care despite concerns related to the maternal grandmother's criminal

_Eleanor_, 414 Mass. 795, 799 (1993).  The mother does not challenge any factual findings.

2

history.  In January 2019 DCF concluded that the allegation of neglect was supported.[3]

One month later, another 51A report alleging neglect was filed when the mother and Hera left the shelter and could not be contacted for eleven days, and shelter workers found smoking pipes with aluminum foil and ashes in the mother's room.  Once the mother and Hera were located, the mother did not explain her absence or where she had resided with Hera.  When DCF spoke with the mother, she admitted she was overwhelmed and felt that she needed to be hospitalized.  The mother agreed to give DCF immediate custody of Hera while the mother was hospitalized.

The mother and Hera were reunited a year and one-half later, at the end of 2020.  DCF informed the mother that the reunification took place on the condition that the mother and Hera maintain residence with the mother's aunt.  Within the first month of being reunited, police officers responded to two reports of domestic disputes between the mother and her

_____

[3] As applicable to this case, DCF's regulations provided that a 51A report would be "supported" if DCF "ha[d] reasonable cause to believe that an incident (reported or discovered during the investigation) of abuse or neglect by a caretaker did occur."  110 Code Mass. Regs. § 4.32(2) (2009).  To support a report does not mean that DCF has made any finding with regard to the perpetrator(s) of the reported incident of abuse or neglect.  It simply means that there is reasonable cause to believe that some caretaker did inflict abuse or neglect upon the child in question.  See id.

boyfriend -- one of which occurred in front of Hera.  Another 51A report was filed in December 2020.

In February 2021, police responded to a call for medical assistance involving Hera.  The mother's boyfriend had found Hera playing with an open bottle of melatonin pills, but the bottle was empty, and no pills could be found.  The police filed a 51A report and the mother took Hera to the hospital the next day.  At the hospital, the mother admitted to a DCF worker that she had consumed four or five shots of alcohol and smoked marijuana before the incident.  The mother also admitted she was not living with her aunt and had been staying with her boyfriend and with the maternal grandmother.  DCF's investigation determined that Hera faced an imminent risk of danger from exposure to the mother's substance use, domestic violence between the mother and her boyfriend, and overall lack of supervision; accordingly, Hera was removed from the mother's custody and returned to the foster home in which she had previously resided.

Over the course of her involvement with DCF, the mother continually failed to complete the tasks in her action plans. For example, the mother failed to secure stable and safe permanent housing, failed to find consistent employment and did not apply for benefit programs, was not consistent with

4

treatment for her mental health or substance use, and would not sign releases so that DCF could confirm progress or participation in any treatment services. The mother was initially consistent in attending visits when Hera was first removed, but upon Hera's second removal, the mother would appear late for in-person visits and rarely attended virtual visits. Hera has been placed with the same foster parents upon both removals, and DCF's goal for Hera was adoption by the foster parents.

Procedural History. On February 26, 2019, DCF filed the underlying care and protection petition in the Juvenile Court. In March 2019, the court granted DCF temporary custody of Hera after mother waived her right to a temporary hearing. A trial on the petition for a review and redetermination began on June 2, 2023.

Over the course of the underlying proceedings, three different attorneys were appointed to represent the mother; the first two attorneys were allowed to withdraw. About eight months the mother's third attorney was appointed, the attorney submitted a motion to withdraw, citing communication concerns with the mother. At a hearing, the mother and the third attorney came to an agreement regarding representation, and the motion was denied.

5

About two weeks before trial, the mother's attorney filed a second motion to withdraw, again citing communication concerns as the basis for the motion. No action was taken on the motion before trial, and counsel renewed the motion on the day of the trial. The mother was not present at the trial but had notice of the motion and the time of the trial because she had been in contact with her counsel the day before. Concluding that the mother had not abandoned the trial, the judge denied the motion to withdraw. The judge also denied the motion to keep the record open to allow the mother to make an appearance, again because she had notice of the trial.

The judge drew a negative inference from the mother's absence from the trial. See Adoption of Talik, 92 Mass. App. Ct. 367, 371-372 (2017) ("Where a parent has notice of a proceeding to determine [their] parental rights and the parent does not attend or provide an explanation for not attending, the absence may suggest that the parent has abandoned [their] rights in the child or cannot meet the child's best interests"). DCF called two witnesses, the ongoing social worker and the foster mother, and submitted twenty-eight exhibits. Based on her detailed findings, the judge concluded that the mother was

6

currently unfit, that her unfitness was likely to continue, and that adoption was in Hera's best interests.[4]

Discussion. 1. Right to counsel. The mother argues it was improper for the judge to deny counsel's motion to withdraw and that the denial effectively denied the mother her right to counsel in a termination trial. We are not persuaded.

"Parents have a fundamental liberty interest in maintaining custody of their children, which is protected by the Fourteenth Amendment to the United States Constitution" (citation omitted). Adoption of Rory, 80 Mass. App. Ct. 454, 457-458 (2011). Because of the due process rights implicated, "[a]n indigent parent in a G. L. c. 210, § 3, proceeding has a constitutional right to counsel." Adoption of Raissa, 93 Mass. App. Ct. 447, 451-452 (2018), quoting Adoption of William, 38 Mass. App. Ct 661, 663 (1995).[5] "That right, however, is not absolute." Adoption of Olivia, 53 Mass. App. Ct. 670, 674 (2002). For example, the right "does not include the right to dictate who shall be appointed," but it does include an opportunity to move

---

[4] The judge found that posttermination and postadoption visitation with the mother was in Hera's best interests and accordingly ordered a minimum of two visits per year.

[5] In recognizing this right, this court has turned to criminal case law for guidance in decisions involving the right to counsel. See Care & Protection of Stephen, 401 Mass. 144, 149 (1987).

7

for substitution of counsel if the parent shows "good cause." Id. at 675. "Good cause includes, but is not limited to, a conflict of interest, incompetence of counsel, or an irreconcilable breakdown in communication" (quotation and citation omitted). Id.

"We review the denial of a motion to withdraw counsel for abuse of discretion." Commonwealth v. Melo, 472 Mass. 287, 304 (2015). Especially when a motion to withdraw is filed on the day of the trial, "[a] judge must balance the interests of the parent with the child's interest in finality." Adoption of Valentina, 97 Mass. App. Ct. 130, 134 (2020).

> "Keeping the attorney in the case has numerous advantages, akin to those gained from appointing advisory counsel for parents proceeding pro se. . . . If the parent appears at some point in the trial or contacts her attorney to provide instructions, the attorney will be able to act in furtherance of those instructions, without requiring any delay in the proceedings. If the parent does not do either of these things, then the attorney will be able to describe to the parent what has occurred and can file any appropriate posttrial motions if so instructed. Finally, the attorney may assist the court, as the attorney did here, by acting as an officer of the court and objecting to, among other things, errors in the presentation of the evidence."

Id. at 135-136.

Here, as in Adoption of Valentina, 97 Mass. App. Ct. at 135, the mother would have gone unrepresented had the judge allowed the motion to withdraw. Even though the attorney in that case went forward with "no position" because the mother had

8

provided no instructions, we concluded that continuing the attorney's representation "constitute[d] sound practice" for the very reasons discussed above. Id. We are not convinced that because the attorney here had instructions to withdraw, this case is significantly different. If anything, the fact that the mother in this case was not present at the trial made it even more pressing to ensure someone represented her interests, even if that person was not the mother's preferred counsel. See Adoption of Olivia, 53 Mass. App. Ct. at 674-675.

Additionally, the judge established on the record that the attorney here, like the attorney in Adoption of Valentina, "made diligent efforts to contact the client," and even established that the mother had responded to the attorney the day before trial. 97 Mass. App. Ct. at 136. The judge properly concluded from this communication that the mother had not abandoned the proceedings and that allowing the motion to withdraw would be improper. See Adoption of Rory, 80 Mass. App. Ct. at 459 (father's text message on day before trial, previous communications with attorney, and previous appearances in court showed father had not abandoned proceedings and thus striking his attorney's appearance violated his due process rights). Despite the difficulty in communication between the mother and her counsel, the attorney in this case nevertheless did as we

9

described in Adoption of Valentina -- made timely objections, cross-examined DCF witnesses, made a closing argument, argued for the mother's visitation with the child, and filed a timely notice of appeal.  Accordingly, we cannot say it was an abuse of discretion for the judge to deny the motion to withdraw.  See Adoption of Valentina, supra at 134-135.

2.  Motion to leave the record open.  The mother also argues that the trial judge erred in denying the request to keep the record open because it denied the mother a meaningful opportunity to be heard.  A judge's decision to leave the record open so a witness can appear is "an aspect of case management about which [the judge] ha[s] broad discretion."  Adoption of Abigail, 23 Mass. App. Ct. 191, 199 (1986).  See Adoption of Gillian, 63 Mass. App. Ct. 398, 409-410 (2005) ("The decision on whether to continue any judicial proceeding is a matter entrusted to the sound discretion of the judge, and the judge's decision will be upheld absent an abuse of that discretion").  In exercising that discretion, a judge balances the interests of the parent with those of the child.  See Adoption of Valentina, 97 Mass. App. Ct. at 134.  See also Adoption of Olivia, 53 Mass. App. Ct. at 675-676 (no abuse of discretion where record indicated judge balanced competing interests).

10

Here, the mother's attorney requested the record be kept open so the mother could provide testimony.  The attorney argued that the mother never said she was not going to appear, and advised the judge, "I would like to do my best to get her present and hopefully give testimony."  However, the judge pointed out that the attorney had heard from the mother the day before trial and the mother was aware of the trial dates from both the attorney and the DCF social worker, yet the mother failed to appear.  The judge had knowledge of the mother's previous difficulty in communicating with her attorney, was the same judge who denied the previous motion to withdraw for the current attorney, and had just heard the testimony of two witnesses and admitted twenty-eight trial exhibits.  In this context, the judge could properly balance the interest of giving the mother the opportunity to provide testimony, if she would take it, with the best interests of the child based on the totality of the record.  See Adoption of Olivia, 53 Mass. App. Ct. at 675.  Accordingly, we cannot say the judge's decision amounted to a "clear error of judgment" that fell "outside the range of reasonable alternatives."  Adoption of Talik, 92 Mass. App. Ct. 367, 375 (2017), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

11

3. The sufficiency of the evidence to terminate the mother's parental rights. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interest" (citation omitted). Adoption of Bea, 97 Mass. App. Ct. 416, 421-422 (2020). "The judge must also find that the current parental unfitness is not a temporary condition" (quotation and citation omitted). Adoption of Arianne, 104 Mass. App. Ct. 716, 720 (2024). In making such a conclusion, a judge "may consider past conduct to predict future ability and performance" (citation omitted). Adoption of Rhona, 57 Mass. App. Ct. 479, 485 (2003).

"On appeal, [w]e give substantial deference to the judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion" (quotation and citation omitted). Adoption of Bea, 97 Mass. App. Ct. at 422. "An abuse of discretion exists where the decision amounts to a clear error of judgment [in weighing the relevant factors, such] that [the decision] falls outside the range of reasonable alternatives"

12

(citation omitted).  Adoption of Arianne, 104 Mass. App. Ct at 720.

The parent's fitness is "determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age."  Adoption of Flavia, 104 Mass. App. Ct. 40, 45 (2024), quoting Adoption of Mary, 414 Mass. 705, 711 (1993).  "The inquiry is whether the parent's deficiencies place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child" (quotation and citation omitted).  Adoption of Olivette, 79 Mass. App. Ct. 141, 157 (2011).  "It is not the quality or character of parental conduct per se that justifies State intervention on behalf of an abused, neglected, or otherwise endangered child.  Rather, it is the fact of endangerment itself."  Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, 383 Mass. 573, 591-592 (1981).

Here, the mother argues that (1) DCF did not meet its evidentiary burden to prove, by clear and convincing evidence, the mother's unfitness, and (2) the judge's conclusion of current unfitness relied on stale evidence.

a.  The sufficiency of the evidence.  After the trial, the judge determined that the mother was unfit to parent Hera

13

because the mother's housing instability, substance abuse, involvement with domestic violence, and unaddressed mental health needs endangered the health and well-being of Hera. The mother points our attention to Adoption of Harriet, 29 Mass. App. Ct. 111 (1990), to show the inadequacy of the evidence to support such a conclusion. In that case, the judge determined the mother was unfit to parent based on the mother's absence at trial, one social worker's testimony, stipulated facts, and the mother's lack of improvement between an earlier award of custody to DCF and the trial. See id. at 113-114. We concluded that the judge's finding regarding the mother's lack of improvement was erroneous and that, on the record presented, his ultimate conclusion of unfitness was not supported by clear and convincing evidence. See id. at 114.

Adoption of Harriet does not convince us the trial judge here erred. While the judge here also only heard from one DCF social worker, the judge also considered twenty-eight exhibits admitted at trial, including multiple reports from DCF workers, spanning over multiple years upon which she based her conclusions. The judge considered evidence that the mother (1) did not have stable housing during either period Hera lived with her, (2) cared for Hera while under the influence of alcohol and marijuana, (3) had a history of domestic violence spanning

14

before Hera's birth to the date of trial, and (4) had mental health issues, which she inconsistently treated and had no verified treatment by the time of trial. The judge properly considered these factors in the determination of the mother's unfitness. See Adoption of Luc, 484 Mass. 139, 145 (2020) (judge can consider substance use in determining unfitness); Adoption of Gillian, 63 Mass. App. Ct. at 404 n.6 ("Violence within a family is highly relevant to a judge's determination of parental unfitness and the best interests of the children"); Care & Protection of Lillith, 61 Mass. App. Ct. 132, 136 (2004) (judge can consider parent's housing instability in determining unfitness). "[T]he [parent]'s unwillingness to adhere to DCF's service plan, which required [the parent] to obtain treatment for [the parent's] mental health challenges and substance use disorder, is relevant to the determination of unfitness" (quotation and citation omitted). Adoption of Luc, supra at 147. Further, based on the record, the judge had sufficient evidence to conclude that these factors, and the ultimate question of unfitness, had been proven by clear and convincing evidence. See Adoption of Arianne, 104 Mass. App. Ct at 720; Adoption of Bea, 97 Mass. App. Ct. at 421-422.

b. The judge's determination of current unfitness. The mother also disputes that she was unfit at the time of trial

because her was too "stale" for the judge to consider it a reliable prediction of future ability and performance. The mother argues that the judge had sufficient evidence of recent behavior to undercut DCF's evidence of the mother's previous unfit behavior.

"The court is permitted to assess prognostic evidence derived from prior patterns of parental neglect or misconduct in determining future fitness and the likelihood of harm to the child." Custody of Two Minors, 396 Mass. 610, 621 (1986). The reliability of such evidence depends on whether the conduct was "not too remote" so that the evidence can "support[] the continuing vitality of such conduct." Adoption of Larry, 434 Mass. 456, 469 (2001).

The mother argues that because she had secured housing the same year as the trial, had self-reported her attendance in therapy that same year, was not under the influence of alcohol or drugs during her meetings with DCF social workers, and had appropriate visits with Hera, the judge could not have found her currently unfit to parent Hera. However, the judge also considered evidence that the mother refused to sign updated releases; that her reunification with Hera was terminated because of her substance use while Hera was in her care; and that she had inconsistent attendance at virtual visits with

16

Hera.  Additionally, the judge could consider the mother's recent failure to comply with DCF's action plans, as well as her noncompliance with her former housing action plans, the recent reports of mother's domestic disputes, and her absence at the trial.

Overall, the judge had sufficient evidence to decide that the mother was currently unfit.  See Adoption of Larry, 434 Mass. at 469 ("The mother has not shown that the judge was clearly wrong in finding that what she calls "stale" information was essentially quite fresh").

Decree affirmed.

By the Court (Shin, Grant & Smyth, JJ.[6]),

Clerk

Entered:  January 31, 2025.

---

[6] The panelists are listed in order of seniority.

17