NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-356

ADOPTION OF KALID (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a judge of the Juvenile Court found the mother unfit to parent two of her children, Kalid and Toni, and terminated her parental rights.  The mother does not contest the finding of unfitness but maintains that the Department of Children and Families (department) failed to make reasonable efforts to facilitate reunification.[2]  We affirm.

Background.  Both Kalid and Toni have intensive special needs.  Toni is diagnosed with autism (low-functioning), and, at age five and six, was nonverbal, not toilet trained, and required specialized education.  In the department's custody, he

_____

[1] Adoption of Toni.  The children's names are pseudonyms.

[2] The parental rights of Kalid's father were terminated in an earlier proceeding.  The parental rights of the unknown, unnamed father of Toni were terminated in this proceeding.  No notices of appeal were filed regarding these termination decisions.

received applied behavioral analysis services six days a week. Due to a pica diagnosis, he required full-time supervision.

Toni was born very prematurely at twenty-five weeks' gestation and, for her early months, it was not clear she would survive. For the first eight or so months of her life, she was hospitalized at a Springfield hospital near the mother's community and, for the first four months, the mother visited regularly. The department filed this care and protection case based on concerns about the mother's lack of engagement in services, active paranoia, treatment of her mental illness through medication to the exclusion of therapy, a report that the mother vaped in the neonatal intensive care unit, and hospital staff reports that the mother behaved inappropriately with Toni.

After Toni spent the first eight months of her life in the Springfield hospital, she was transferred to a hospital in Boston. At the time of trial, the mother had not visited with Toni since September 2023. The mother found it difficult to get to the Boston hospital. The department provided bus passes, but the mother asserted that the cost of transportation between the bus terminal in Boston and the hospital was prohibitively high. Further complicating visits, for some of this time, the mother was on required bed rest at the end of her fourth pregnancy.

The judge found that the mother was unable to work with professionals and providers to coordinate the services and supports required by her high-needs children.  Specific to Toni, the judge found the mother had no real appreciation for Toni's needs, that there was no evidence of any bond or connection between the mother and Toni, and that the mother had never cared for Toni independently due to Toni's lifelong hospitalization. Should Toni be placed with the mother, the judge found, Toni would be "gravely at risk of death or serious, permanent injury" due to the mother's inability to meet her care needs.

Specific to Kalid, the judge found that the mother did not ask about the services he receives, did not try to engage with Kalid at monthly visits (sometimes falling asleep) and was a passive observer during visits, showing minimal interest in caring for him.  The judge noted that, at trial, the mother was unsure about the current status of Kalid's pica diagnosis and had not sought an update.  The mother's plan for Kalid, if he were to be returned to her care, was to have him at school during the school day and then have one of her family members pick him up after school and keep him until the end of the mother's work day at 11 P.M., which the judge characterized as a plan to have "virtually no awake time" with Kalid.  The judge concluded that the mother was not capable of meeting Kalid's

3

special needs and that he would be "at great risk of serious abuse and/or neglect" in her care.

The mother's engagement with the department has been characterized by inconsistency and lack of follow through. The trial judge found that the mother had "refused to engage in any services to any degree that might improve her ability to meet the [c]hildren's needs." She had not scheduled home visits and, at the time of trial, had not met with a social worker for over six months. The trial judge found that the mother was aware that the department viewed her as disengaged.

The mother uses marijuana twice a day to manage her anxiety. Her drug use contributed to the removal of Kalid in 2019 when the mother described smoking a marijuana cigarette at her apartment, then driving to her sister's apartment to collect Kalid, then driving him home and feeling "funny." She did not acknowledge the danger of consuming marijuana and then driving a car, with her son as a passenger, while under the influence.

The judge also considered the mother's marijuana use in the context of her mental health diagnoses. The mother disagreed with a schizophrenia diagnosis but acknowledged diagnoses of anxiety and depression. The judge recognized that the mother is "generally . . . consistent" in taking her psychiatric medication and has "maintained minimal engagement with an individual therapist," but found that the mother showed "no

4

insight into the impact her mental health ha[d] on her parenting," or the risk that her twice-daily habit of smoking marijuana -- which the judge described as a coping mechanism -- could pose to her children.

Discussion. "In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Ilona, 459 Mass. 53, 59 (2011). Clear and convincing evidence means that "[t]he requisite proof must be strong and positive; it must be 'full, clear and decisive.'" Adoption of Chad, 94 Mass. App. Ct. 828, 838 (2019), quoting Adoption of Iris, 43 Mass. App. Ct. 95, 105 (1997), S.C., 427 Mass. 582 (1998). "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest[s] of the child, and reverse only where findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, supra. As noted above, the mother does not contest the finding of unfitness.

We agree with the department that the mother's reasonable efforts claim was waived. "It is well-established that a parent must raise a claim of inadequate services in a timely manner."

5

Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010), S.C., 460 Mass. 72 (2011). "The parent should assert the claim 'either when the parenting plan is adopted, when [s]he receives those services, or shortly thereafter.'" Adoption of West, 97 Mass. App. Ct. 238, 242 (2020), quoting Adoption of Gregory, 434 Mass. 117, 124 (2001). "A parent cannot raise a claim of inadequate services for the first time on appeal, as the department would not have had the opportunity to address it." Adoption of West, supra. The mother waived this issue by failing to raise it at or before trial.

Were we to consider the reasonable efforts argument, however, we would not be persuaded. The record supports the judge's conclusion that the mother engaged only inconsistently with the department and failed to comply, in substantial part, with her action plans. "Evidence of parents' refusal to cooperate with the department, including failure to maintain service plans . . . is relevant to the determination of unfitness." Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005). Furthermore, "[t]he department's obligation to make reasonable efforts to reunify the child with the mother is contingent upon her obligation to substantially fulfill her parental responsibilities (including seeking and using appropriate services)." Adoption of Yalena, 100 Mass. App. Ct. 542, 554 (2021). The mother faults the department for failing

6

to "escalate its involvement or provide more robust supports," but fails to acknowledge her own refusal to engage with the department, respond to outreach from department social workers, accept additional post-hospitalization supports, or take the steps recommended on her action plans.

The evidence supported the judge's conclusions that the mother refused or ignored proffered department services, failed to make progress on her action plans, used marijuana at inappropriate and dangerous times, and engaged inconsistently with her special needs children. She had not visited her daughter for about eight months at the time of trial and had only a limited understanding of her son's diagnoses and needs. This evidence amply supported the judge's determination that the department met its obligations and "complied with its duty to make 'reasonable efforts . . . to prevent or eliminate the need for removal [of the children] from the home.'" Adoption of Ilona, 459 Mass. at 61, quoting G. L. c. 119, § 29C. See Adoption of Daisy, 77 Mass. App. Ct. at 782 (mother's delay in obtaining therapy for herself undermined her inadequate services claim); Adoption of Eduardo, 57 Mass. App. Ct. 278, 282 (2003) ("Because the mother failed to make use of the services offered to strengthen and then reunify her family and denied her mental health needs by refusing both evaluation and treatment, she cannot successfully argue that [the department's] reasonable

7

efforts failed to accommodate properly her mental health needs or to strengthen her family").

A "judge is not required to grant [a parent] an indefinite opportunity for reform." Adoption of Cadence, 81 Mass. App. Ct. 162, 169 (2012). "Stability in the lives of children is important, particularly in a case that has continued for a long period of time in the hope that the [mother] could and would successfully rehabilitate [herself]." Adoption of Nancy, 443 Mass. 512, 517 (2005). We are mindful that "the focus of proceedings that terminate or curtail parental rights should be the best interest[s] of the child." Adoption of Olivia, 53 Mass. App. Ct. 670, 677 (2002). The judge's thoughtful findings and conclusions properly focused on these children and their needs, and her decision that termination was in their best interests was supported by clear and convincing evidence.[3]

Decrees affirmed.

By the Court (Singh, Hershfang & Wood, JJ.[4]),

Clerk

Entered: February 9, 2026.

---

[3] To the extent that we do not discuss other arguments raised by the mother in her brief, they have not been overlooked. "We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[4] The panelists are listed in order of seniority.